UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

| | |
|---|---|
| D.N., by her next friends, JESSICA N., mother, and GARY N., father,<br><br>                          Plaintiff,<br><br>   v.<br><br>GOVERNOR RONALD DESANTIS, in his official capacity as Governor of Florida; FLORIDA HIGH SCHOOL ATHLETIC ASSOCIATION; BROWARD COUNTY SCHOOL BOARD; SUPERINTENDENT ROBERT RUNCIE, in his official capacity as Superintendent of Broward County Public Schools; FLORIDA STATE BOARD OF EDUCATION; and COMMISSIONER RICHARD CORCORAN, in his official capacity as Commissioner of Education,<br><br>                          Defendants. | Civil Action No.<br><br>Hon.<br><br>Complaint for Declaratory and Injunctive Relief |

## INTRODUCTION

1. D.N. is a thirteen-year-old girl and a rising eighth grader at a middle school in Broward County. She has played different sports over the years, but her current focus is soccer. She is on the girls' team in her current school and wants to continue to play on the girls' team when she starts high school. She also is on a girls' travel team and plays in a girls' recreational league. She is passionate about soccer, and she also intends to try out for the girls' volleyball team at her middle school in the fall.

2. D.N. has invested significant time to hone her soccer skills and being a part of the soccer team matters to her. It is a source of pride for her, and is also the major source of her

social and friendship network. Her family, who is only using an initial for their last name to protect the child's privacy, has invested significant time and financial resources in ensuring that she is able to participate in the sports she loves. Her parents have arranged their family life to ensure their daughter can fulfill her educational and athletic dreams. D.N. is a transgender girl and her family wants her to be able to fully participate in girls' athletics teams.

3. The Florida legislation that is the subject of this complaint, SB 1028, would prevent D.N. from participating in the sports she loves and decimate her social network. It would bar her simply because of her transgender status from the girls' school teams for which she has been training for years. It would force her to abandon the sports that mean so much to her simply because, soon enough she will not be able to participate in them at the school level. This statute, which is part of a wave of anti-transgender bills across the county, would stigmatize this teenager and separate her from her peers and teammates.

4. SB 1028, ironically titled the "Fairness in Women's Sports Act," has nothing to do with fairness or equality for girls or women in sports. By excluding transgender girls and women from girls' sports teams and forcing them, if they want to play sports at all, to join a team that matches neither their gender identity nor their current physical status, the bill discriminates on the basis of sex and transgender status in violation of the United States Constitution and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*

5. D.N. seeks declaratory and injunctive relief from this Court to allow her to continue to play girls' sports and to fully participate with her teammates, without being sidelined and ostracized solely because of her gender identity.

## PARTIES

**PLAINTIFF**

6.       D.N. is a thirteen-year-old who lives in Broward County, Florida.  She is a middle school student, who is an active member of the school soccer team.  She has practice and games for that team several times per week during the school year.  She also is on a girls' travel soccer team and does that several times a week.  In addition, she is on a girls' recreational team.  Her life revolves around soccer, in addition to her schoolwork, and athletics are integral to her scholastic pursuits.  During the summer, she also plays volleyball and intends to try out for the middle school girls' volleyball team this coming fall.  She brings this suit through her next friends, her mother Jessica N. and her father Gary N.

**DEFENDANTS**

7.       Defendant Ronald (Ron) DeSantis is the Governor of the State of Florida.  He is the Chief Executive of the State and a strong proponent of the law.  He held a press conference upon signing a bill that perpetuates stereotypes and inaccurate information about transgender individuals.  As Governor, he is responsible overall for state policy.

8.       Defendant Florida High School Athletic Association ("FHSAA") is a nonprofit that sets regulations and policies for high school athletics in the State of Florida.  It enforces eligibility regulations that have been adopted by its member schools or enacted into law by the Florida legislature.  The Broward County Schools, in the district where plaintiff attends school, are members of the FHSAA.  Florida Statute Section 1006.20 provides the FHSAA with the authority to adopt bylaws relating to student participation in interscholastic athletic teams.

9.       Defendant Broward County School Board has authority under Florida Statute Section 1006.195 to establish student eligibility for participation in extracurricular activities and set student disciplinary policies.  It establishes policies and practices for treatment of transgender

students in general in the school district and will be required to implement any regulations set by the State Board of Education and the FHSAA under SB 1028.  As a student in this school district who plays girls' sports, D.N. will be impacted by their actions.

10. Superintendent Robert Runcie is the Superintendent of the Broward County School Board and is being sued in his official capacity.

11. The Florida State Board of Education sets statewide educational policy in Florida. Florida Statute Section 1001.03(8) gives the State Board of Education the authority to enforce compliance with the law as it relates to all school districts and public postsecondary institutions, except the State University System.  The Florida State Constitution, Article IX, Section 2, gives the Board the responsibility of supervision of the system of free public education, and it selects the Commissioner of Education.

12. Commissioner Richard Corcoran is the leader of the Florida Board of Education and is being sued in his official capacity.

## JURISDICTION AND VENUE

13. This action arises under the United States Constitution, 42 U.S.C. § 1983 and Title IX of the Education Amendments of 1972.

14. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the laws of the United States, and because plaintiff brings this action to redress the deprivation, under color of state law, of rights secured by the United States Constitution and by Title IX of the Education Amendments of 1972.

15. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2) because some of the Defendants reside in this jurisdiction and all reside in the State of Florida; and because a substantial part of the events giving rise to plaintiff's claims occurred in this District.

16. This Court can enter a declaratory judgement and provide preliminary and permanent injunctive relief pursuant to Federal Rules of Civil Procedure 57 and 65 and 28 U.S.C. §§ 2201 and 2202.

**FACTUAL ALLEGATIONS**

**OVERVIEW OF GENDER IDENTITY**

17. A person's gender identity is a core part of their self-concept and involves how they see themselves and present to the outside world. It must be respected. Although a sex designation may occur at birth, this designation is not determinative of someone's gender identity.

18. If a person's gender identity aligns with the sex designation that occurs at birth, the person will be cisgender. For transgender individuals, their gender identity does not align with the sex that was assigned to them and that may be designated on an official document such as a birth certificate.

19. Gender dysphoria, a diagnosis recognized in the DSM-5, is a clinically significant psychological distress that results from an incongruence between the sex assigned at birth and the person's true gender identity. Gender dysphoria may begin in childhood, though for some people it does not manifest itself until puberty or adulthood.

20. A social transition involves social, cosmetic, and legal changes, without regard to medical interventions. An individual who socially transitions may ask others to refer to them by a name and pronouns that align with their gender identity, and some may legally change their name. An individual who does not identify with the gender assigned to them at birth may socially transition so that their name and appearance match their gender identity. This promotes

healthy living and allows them to fit in with their peers, without experiencing depression, isolation or stigma.

21. As transgender children age and endogenous puberty approaches, they may receive puberty-delaying treatment. For a transgender girl, this ensures that she does not experience any of the developmental impacts of testosterone that would occur without this intervention. It also may include estrogen treatment so that the adolescent body develops secondary sex characteristics like other girls, consistent with her true gender identity.

**GENDER IDENTITY OF D.N.**

22. From a very young age, D.N. identified as a girl and even in pre-school she presented as female. As early as three years old, D.N. exhibited behavior that traditionally is associated with being a girl and would insist on wearing clothes and colors (pink) that girls wore. She saw herself as a girl and conveyed that to her parents in clear terms. At five or six, her parents realized, based on D.N.'s behavior and statements, that their daughter was transgender. D.N. took on a name that was more typically associated with girls and that is the name she has used since second grade. At age seven, she became part of a girls' soccer team. She was diagnosed with gender dysphoria at age seven. Her family fully supports her in her gender identity and cares deeply about their daughter.

23. At age 11, at the recommendation of her endocrinologist, she began hormone blockers to stop testosterone.

24. This year, under medical supervision, she began receiving estrogen, and will continue to do so for the rest of her life. This will allow her to live as the girl/woman that she is.

25. D.N.'s pronouns are she, her and hers and that is how friends, family, and people she encounters in her daily life refer to her.

**SCHOOL ATHLETIC ACTIVITIES**

26. Sports have been an essential part of D.N.'s life and education for many years. She began playing soccer at age seven and continues to do so on multiple teams. She has previously played basketball and softball. She also plays volleyball. Sports provide her with a sense of belonging, peer support, and life success, and are an essential part of her wellbeing and school experience.

27. Her family spends many hours each week taking D.N. to sports practices, matches and traveling to games. Her sports activities, and the travel involved, consume a significant part of the family's time, but they do this because it means so much to their daughter. Her friends are on the teams, and she is nurtured and supported by being part of these teams.

28. Team sports provide D.N. and other young people with opportunities to learn important life skills such as cooperation, leadership and how to deal with adversity and success. Sports improve self-esteem and decrease the isolation that adolescents often feel. They help her plan and be organized. They also allow her to meet people across the State of Florida, because she plays on a travel team. Sports expands her horizons. It is widely accepted by school administrators, psychologists and other professionals who work with young people that participation in sports reduces the use of illegal substances and increases graduation rates. Sports are a vital part of the educational experience.

29. D.N. dreams of being on high school sports teams, whether it is in soccer or volleyball. She cannot imagine life without these experiences and feels it would be cruel to take this opportunity away from her. D.N. has lived as a girl for years now and this is her true identity.

30. D.N.'s identity and development are that of a girl and she is on estrogen. She has no competitive advantage merely because of the sex assigned to her at birth. Now and when she

7

enters high school, from an athletic perspective, she is similarly situated to her cisgender female teammates. The National Collegiate Athletic Association ("NCAA"), World Athletics, and the International Olympic Committee (the "Olympics") all allow women who are transgender to play in women's athletics after their levels of testosterone have been suppressed for a period of time or after the levels fall below a particular threshold. D.N.'s testosterone levels have been suppressed for more than a year.

**BROWARD COUNTY SCHOOL POLICY**

31. The Broward County Public Schools have issued an LGBTQ Critical Support Guide, the terms of which cannot be reconciled with SB 1028. That policy notes that nationwide, LGBTQ students are four times more likely to attempt suicide than their non-LGBTQ counterparts. The guide acknowledges that schools may not be safe places for LGBTQ youth and there is a need to create more welcoming and affirming learning environments for such youth. The guide specifically states that transgender students should use a restroom and/or locker room corresponding to their consistently asserted gender identity. It further states that transgender students should play on the sports team corresponding with their consistently asserted gender identity.

32. The Broward County School Board has a specific non-discrimination policy which, in pertinent part, states that the School Board is "committed to the provision of equal access in all student . . . activities" and established the policy to "provide an environment free from discrimination and harassment based upon . . . gender identity [and] gender expression[.]" Sch. Bd. of Broward Cnty., Fla., § 4001.1, NONDISCRIMINATION POLICY STATEMENT (2017).

33. D.N. and her family have relied on these policies, and she uses the bathroom and locker room that matches her gender identity. D.N. and her family appreciate that Broward County has created a welcoming environment for her. The existence and implementation of

these nondiscrimination policies has made it possible for D.N. to attend public school and be true to her identity as a girl.  It has been a positive experience for her, but the new law, which would eviscerate this aspect of the educational environment, is raising significant concerns and causing stress for her.  Broward County will have no choice because of this new law but to advise D.N. and her family that she cannot try out for or compete on any girls' high school sports team.  The plan and goals she had for future school sports participation will be completely altered if SB 1028 is allowed to remain in place.  This will apply regardless of the sport, regardless of the coach's wishes and regardless of how much time she already spent on girls' sports teams before this restrictive law was enacted.

**FLORIDA LEGISLATION**

34. The Florida Legislature introduced two different bills, one in each chamber, aimed at preventing trans youth from participating in youth sports and playing on teams that align with their gender identity.

35. First, the Florida House of Representatives' Secondary Education and Career Development Subcommittee introduced HB 1475, "Sex-specific Student Athletic Teams or Sports," on February 26, 2021.  State Representative Kaylee Tuck co-introduced HB 1475 and remained a staunch, prominent supporter throughout its debate.  After multiple amendments, the Florida House of Representatives passed HB 1475, as amended, by a vote of 77-40.  However, this measure ultimately did not pass in the Senate Rules Committee.

36. Similarly, State Senator Kelli Stargel, Chairwoman of the Senate Appropriations Committee, introduced and filed the second bill, titled SB 2012, "Promoting Equality of Athletic Opportunity," on March 2, 2021.  This bill passed the Education Committee on March 23, 2021, and the Health Policy Committee on March 31, 2021.  This measure, like HB 1475, did not pass in the Senate Rules Committee.

37. With the 2021 legislative session scheduled to end on April 30, 2021, Sen. Kelli Stargel acknowledged that SB 2012 was unlikely to pass and stated, "in a time-limited environment, I don't know that we will have sufficient time to revisit SB 2012 this session." *See* https://www.advocate.com/transgender/2021/4/21/floridas-anti-trans-sports-bill-wont-pass . However, in a contested, eleventh-hour procedural move three days before the end of the 2021 legislative session, Rep. Tuck introduced House Amendment 649221 to an amended version of a different bill, SB 1028, on April 28, 2021. This House Amendment created the "Fairness in Women's Sports Act" and inserted it within this larger omnibus charter school bill. After just over an hour and a half of debate, the House adopted Amendment 649221.

38. The same day (April 28, 2021), the Senate passed SB 1028 as amended (incorporating Amendment 649221). Governor Ron DeSantis signed SB 1028 into law on June 1, 2021, effective July 1, 2021.

**FLORIDA BILL AS ENACTED**

39. On June 1, 2021, Governor Ron DeSantis signed the "Fairness in Women's Sports Act" (SB 1028), which amends Florida Statute Section 1006.205. The law becomes effective on July 1, 2021.

40. At the press conference in connection with the signing of the bill, Senator Stargel said, "We all know that men are stronger than women. Watching the video [of a race in Connecticut], I kept thinking to myself, I've always heard as a kid, 'you run like a girl.' And when you're looking at that video, it's even evident the transgender woman who competed, or self-identified woman ran very differently than the others in the competition. It's physiologically different. Men are stronger." This statement is counter to scientific research and evidence.

41. Governor DeSantis' remarks at this same press conference echoed this theme in which sex assigned at birth is the only factor in determining girls' sports team participation. He

said, "We're going to go based off biology, not based off etiology [the cause of a disease or abnormal condition] when we're doing sports."  This statement fails to acknowledge the complexity of biology, as it relates to sex and gender identity.  It was also apparent that an out-of-state athlete, from Connecticut, was brought into the press conference because there is no one in Florida whom Defendants could bring forward who has been adversely impacted by the participation of girls such as D.N. in school sports.

42. As enacted, the law prohibits transgender girls from participating, at any public secondary school or public postsecondary institution, in any school-sponsored girls' sports.  It mandates that interscholastic, intercollegiate, intramural, or club athletics teams or sports that are sponsored by a public school must be "expressly designated" as male (men or boys) or female (women or girls) based on the "biological sex at birth of team members."  It also provides for coed or mixed teams, which can include both males and females.

43. Section 3(b) states that athletic teams or sports designated for males, men or boys may be open to students of the female sex.  Section 3(c) provides that athletic teams or sports designated for females, women or girls may not be open to students of the male sex. Section 3(d) provides that "a statement of a student's biological sex on the student's official birth certificate is considered to have correctly stated the student's biological sex at birth if the statement was filed at or near the time of the student's birth."

44. A girl or woman who is transgender, even if she has received an amended birth certificate and therefore her prior certificate no longer has any legal significance including in the State of Florida, could never play on a girls'/women's team under this statute.  *See* Fla. Stat. Ann. § 382.016 (directing the Dept. of Health to "amend or replace the original [birth] certificate as necessary" when a proper request is made "as specified by rule"); *see also* Fla. Stat. Ann. §

11

382.002(3) (providing that a "certified" birth certificate is one "which, when issued by the State Registrar, has the full force and effect of the original vital record").

45. Section 2(b) of SB 1028 states that the Legislature has determined that "requiring the designation of separate sex-specific athletic teams or sports is necessary to maintain fairness for women's athletic opportunities."  The bill, as enacted, makes no findings as to how using the criteria of biological sex at birth based on a birth certificate issued "at or near the time of the student's birth" actually furthers this legislative goal.

46. Section 4(a) of SB 1028 provides private rights of action for any student who is deprived of an athletic opportunity or suffers "direct or indirect harm" as a result of a violation of the statute.  It contains no criteria as to how a student would establish that he or she had been deprived of such an opportunity.  It also does not explain how a student bringing such a claim would learn the gender identity of anyone else who was a student at the school.

47. Section 4(b) of SB 1028 provides a private right of action, including the right to seek money damages, for any student who is subject to retaliation or other adverse action as the result of reporting a violation of this section, including to any state or federal agency.  As with Section 4(a), it provides no detail as to how damages would be calculated.  Section 4(c) also provides a private right of action to any school or public postsecondary institution that suffers any direct or indirect harm as a result of this section.  It allows the school to bring an action against any governmental entity, licensing or accrediting organization, or athletic association or organization.

48. Transgender girls who want to participate or continue to participate in school-sponsored girls' sports, now must face the risk their participation will be subject to legal challenge.  They and their family could be involuntarily compelled into protracted and invasive

litigation. Any such suit would, of necessity, require production of private medical and academic records, which in any other context would not be available to other students or those students' families, let alone the general public.

49. Transgender girls such as D.N. also will be forced to defend their achievements when cisgender students claim that they were "deprived" of an athletic opportunity or suffered "indirect harm" because the transgender student was accepted onto the team and the cisgender student was not. They may have to answer questions whenever the team wins a game because someone erroneously suspects that it happened simply because a transgender girl was playing. Although the decision to accept the transgender girl on the team would be based on factors unrelated to her transgender status, including personality and leadership skills, this law will involve the courts in a myriad of suits over what generally has been a matter best left to team coaches and school administrators.

50. The bill also could create the absurd situation of individual schools suing the federal government should the federal government decide that the Florida law violates Title IX of the Education Amendments of 1972, whether or not the school district agrees with the federal government or concludes it is bound to follow federal law.

51. Although SB 1028 would bar D.N. and other transgender girls from participating on girls' sports teams, it would allow a boy who is transgender to play on the girls' sports teams even if the boy had received testosterone as part of his gender-affirming medical care.

52. D.N.'s focus, besides her schoolwork, is sports, and in particular soccer. It is not an option for her to be on the boys' team when she enters high school or goes to college because she is not a boy. She would be subjected to an invasion of privacy if she had to be on the boys' team and use the boys' locker room. She is receiving estrogen and as she continues through

puberty, will develop as a girl. Her social network and support system are the girls on her team, and she would be ostracized and bullied if she were to be forced to be on a boys' team. Compelling her to be on the boys' team also would force her to disclose her transgender status to the entire school.

53. If D.N. does not have the option to play girls' sports in high school and college, she will not be able to play sports at all and will lose the benefits of being part of the team network that has supported her emotionally and psychologically. She may be isolated and face emotional and mental confusion and emotional distress during this critical period of her social and psychological development. She will be stigmatized since for all other purposes she will be living as a girl, but unable to play sports with her peers. She also may lose the opportunity to continue on travel teams; if she cannot play school sports, her soccer skills will certainly decline.

54. D.N. is developing significant leadership skills as the result of her soccer and other sports' participation. These leadership skills will benefit her as she approaches adulthood and make her stand out as a future college applicant. If she is unable to play soccer or other sports in high school, her skills will decline, and she may not be able to participate even in recreational leagues. Depriving her of these opportunities will have a long-term impact on her future. It also will create a sense of shame and diminish her positive sense of self, which can have lifelong consequences.

55. SB 1028 also sends a message to D.N.'s current and future teammates that there is something wrong with her and is contrary to the Broward County School Board's stated policies of inclusion. By targeting only transgender girls, the law sends a message that they should be isolated instead of embraced and treated with suspicion instead of acceptance. It sends a false message that they are taking opportunities away from others instead of being rewarded for their

hard work and hours of practice and dedication to their sport.  It is contrary to the values and policies that Broward County has established and is contrary to the values that we want young people to follow.  D.N. has worked hard for her success at athletics and it is not attributable to her transgender status.  This law will take all that away from her and other transgender girls and upend the official policies and educational goals of Broward County schools.

## CLAIMS FOR RELIEF

## COUNT I

## VIOLATION OF TITLE IX

20 U.S.C. § 1681, *et. seq*.
Plaintiff against Defendants Florida High School Athletic Association, Broward County School Board, Superintendent Robert Runcie, Florida State Board of Education, Commissioner Richard Corcoran

56. Plaintiff incorporates all of the preceding paragraphs and the facts contained therein.  Plaintiff brings this Claim against Defendants Florida High School Athletic Association, Broward County School Board, Superintendent Robert Runcie in his official capacity, Florida State Board of Education, and Commissioner Richard Corcoran in his official capacity.

57. Title IX states, in pertinent part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity, receiving Federal financial assistance." 20 U.S.C. § 1681(a).

58. The State Board of Education and the Broward County School Board are educational programs and constitute programs receiving federal financial assistance.

59. The Florida High School Athletic Association regulates and enforces policies involving school athletics in the State of Florida and either directly or indirectly receives federal funding because local school boards are members of the Association.

60. All of the named entities will be required to enforce SB 1028 and to issue regulations and policies enforcing the same. The law provides no discretion to any of the named entities to create policies or programs that are not in conformance with the strict mandates of SB 1028. The law provides no guidance about how to reconcile or revise preexisting school policies.

61. Although the Florida High School Athletic Association has the authority to adopt bylaws or policies regarding participation in high school athletics, all of the named defendants are likely to be involved in dissemination and enforcement of policies required by SB 1028. All of the schools impacted by this law, including those in Broward County, receive federal funding, either directly or indirectly, and are within the regulatory authority of Title IX.

62. Under Title IX, excluding transgender individuals from school programs or athletic opportunities within schools is discrimination on the basis of sex.

63. Neither Title IX nor any federal regulations permit a state or locality to discriminate based solely on a person's gender assigned to them at birth. Because this law contains a definition of sex that directly contradicts federal law, and segregates transgender girls based solely on their status as transgender girls or women, it violates Title IX.

64. SB 1028 further violates Title IX by creating different rules for transgender boys versus transgender girls.

65. D.N. is irreparably harmed by Defendants' violation of Title IX.

# COUNT II

## DEPRIVATION OF EQUAL PROTECTION

U.S. Const. Amend. XIV
Plaintiff against all Defendants

66. Plaintiff incorporates all of the preceding paragraphs and the facts contained therein. Plaintiff brings this Claim against all Defendants.

67. The Fourteenth Amendment of the U.S. Constitution contains the Equal Protection Clause, enforceable through 42 U.S.C. § 1983. That clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, §1.

68. Defendants are all governmental actors and/or employees acting under color of state law for purposes of 42 U.S.C. § 1983 and the Fourteenth Amendment.

69. Discrimination based on sex and transgender status is prohibited by the Equal Protection Clause and is subject to heightened scrutiny. Defendants cannot justify the discriminatory action at issue here because it is neither tailored to the achievement of a compelling governmental interest nor substantially related to an important state interest.

70. SB 1028 treats transgender girls and transgender women differently from both cisgender girls and women and transgender boys and men by precluding them from engaging in school-sponsored athletics based on their sex and transgender status.

71. The State and the Defendants have no legitimate, important or compelling state interest in regulating school sports in the manner at issue here based solely on gender assigned at birth. Florida's purported state interest in athletic "fairness" ignores basic medical science about transgender students, as well as the impact of hormone suppressants. It also fails to take into account individuals, such as plaintiff D.N., who begin such treatments at a young age.

72. Although defendants contend that the law is not aimed at transgender individuals, the wording of the law and defendants' own contemporaneous public statements refute that claim. The only individuals impacted by the law, which focuses on girls' and women's gender as determined at birth, are members of the transgender community.

73. The law also allows other individuals who claim that they have been denied athletic opportunities to bring claims against transgender girls and women based solely on their sex and transgender status.

74. For all these reasons, Defendants have violated the Equal Protection Clause, which is enforced through 42 U.S.C. § 1983.

75. D.N. is irreparably harmed by Defendant's unconstitutional action in violation of the Equal Protection Clause, enforceable pursuant to 42 U.S.C. § 1983.

## COUNT THREE

## VIOLATION OF RIGHT OF PRIVACY

U.S. Const. Amend. XIV
Plaintiff against all Defendants

76. Plaintiff incorporates all of the preceding paragraphs and the facts contained therein. Plaintiff brings this Claim against all defendants.

77. The Fourteenth Amendment of the U.S. Constitution contains the Due Process Clause, enforceable through 42 U.S.C. § 1983. It provides, in pertinent part, that no person shall be "deprived of life, liberty, or property without due process of law." This right includes the substantive right not to have the state compel disclosure of personal, sensitive information.

78. The right to liberty under the Due Process Clause provides individuals with a right to be free from unnecessary government intrusion into their private affairs and from unnecessary interference with their private conduct. Defendants' enforcement of the law would

18

require Plaintiff to disclose sensitive medical information that would otherwise not be available, including to third parties, parents and other students who might file claims under this law. It would require such disclosure even if her legal documents, and in particular her birth certificate, identified her gender as female since she would have to produce information as to her assigned gender at the time of birth.

79. Defendants cannot justify this discriminatory action because it is not related to any compelling or important governmental interest.

80. D.N. is irreparably harmed by Defendants' violation of the Due Process Clause.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter an order and judgement as follows:

A. Declaring that the provisions of and enforcement by Defendants of SB 1028 violate Plaintiff's rights under Title IX of the Education Amendments of 1972.

B. Declaring that the provisions of and enforcement by Defendants of SB 1028 violate Plaintiff's rights under the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment.

C. Preliminarily and permanently enjoining Defendants, their officials, agents, employees, assigns and all persons acting in concert or participating with them from enforcing SB 1028 and any other law, policy or bylaw that would preclude Plaintiff from participation in any girls' sports team in Florida.

D. Waiving the requirement for the posting of a bond as security for entry of temporary or preliminary injunctive relief.

E. Awarding Plaintiff nominal damages, as well as her costs, expenses and reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and other applicable laws; and

F. Granting such other and further relief as the Court deems just and proper.

DATED June 29, 2021

Respectfully submitted,

/s/ *Jason A. Ross*
Jason A. Ross
Fla. Bar No. 59466
Jason.Ross@arnoldporter.com
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue NW
Washington, DC 20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999

Rosalyn Richter*
Arnold & Porter Kaye Scholer LLP
250 W. 55th St.
New York, N.Y. 10019
Telephone: (212) 836-8000
Facsimile: (212) 836-9689
Rosalyn.Richter@arnoldporter.com

Kent A. Yalowitz*
Arnold & Porter Kaye Scholer LLP
250 W. 55th St.
New York, NY 10019
Telephone: (212) 836-8000
Facsimile: (212) 836-9689
Kent.Yalowitz@arnoldporter.com

Jason Starr*
Human Rights Campaign Fund
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762
Facsimile: (202) 628-0517
Jason.Starr@hrc.org

Sarah Warbelow*
Human Rights Campaign Fund
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 572-8981
Facsimile: (202) 628-0517
Sarah.Warbelow@hrc.org

* Motions for admission *pro hac vice* forthcoming

*Counsel for D.N., by her next friends,*
*Jessica N., mother, and Gary N., father*