**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

D.N., by her next friends, JESSICA N.,
mother, and GARY N., father,

                           Plaintiff,

          v.

GOVERNOR RONALD DESANTIS,
in his official capacity as Governor of
Florida; *et al.*,

                        Defendants.

**Case No. 21-61344-CIV-ALTMAN/Hunt**

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

I.   Introduction .................................................................................................. 1

II.  Plaintiff's Claims Are Ripe And Are Jurisdictionally Proper............................ 2

III. Plaintiff Has Pled A Valid Claim Under Title IX............................................ 6

IV.  The Complaint Sufficiently Pleads A Violation Of The Equal Protection Clause .......... 10

V.   Plaintiff's Due Process Claim Is A Valid Pre-Enforcement Challenge......................... 12

     A.   Plaintiff Properly Alleges Injury In Fact............................................. 12

     B.   Plaintiff's Injury Is Traceable To And Redressable By Defendants .................. 14

VI.  Plaintiff Has Sufficiently Alleged An Invasion Of Privacy Claim................................ 16

VII. The FHSAA Is A Proper Defendant In This Case....................................................... 17

VIII. Governor DeSantis Is A Proper Defendant In This Case .............................................. 18

IX.  Hearing Requested ...................................................................................... 19

X.   Conclusion................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                                              <u>Page(s)</u>

*ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*,
   557 F.3d 1177 (11th Cir. 2009) ............................................................................................ 3

*Adams v. Sch. Bd. of St. Johns Cnty*,
   — F.4th —, 2021 WL 3722168 (Mem) (11th Cir. Aug. 23, 2021)................................... 7

*Adams v. Sch. Bd. of St. Johns Cnty*,
   3 F.4th 1299 (11th Cir. 2021) .............................................................................................. 7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................................. 6

*Ass'n for Children for Enf't of Support, Inc. v. Conger*,
   899 F.2d 1164 (11th Cir. 1990) ........................................................................................... 6

*B.P.J. v. W. Va. State Bd. of Educ.*,
   No. 2:21-CV-00316, 2021 WL 3081883 (S.D.W. Va. July 21, 2021)........................ 8, 11, 12

*Babbitt v. Farm Workers*,
   442 U.S. 289 (1979)........................................................................................................... 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................................. 6

*Bell v. City of Winter Park, Fla.*,
   745 F.3d 1318 (11th Cir. 2014) ......................................................................................... 13

*Bostock v. Clayton Cnty, Georgia*,
   140 S.Ct. 1731 (2020).......................................................................................................7, 8

*Carver Middle Sch. Gay-Straight All. v. Sch Bd. Of Lake Cnty, Fla.*,
   842 F.3d 1324 (11th Cir. 2016) ........................................................................................... 4

*City of Cleburne v. Cleburne Living Ctr.*,
   473 U.S. 432 (1985)........................................................................................................... 10

*Clark v. Arizona Interscholastic Assoc.*,
   695 F.2d 1126 (9th Cir. 1982) ........................................................................................... 11

*Corbitt v. Taylor*,
   513 F. Supp. 3d 1309 (M.D. Ala. 2021)............................................................................ 11

*D.T. v. Christ*,
   No. CV-20-00484-TUC-JAS, 2021 WL 3419055 (D. Ariz. Aug. 5, 2021) ...................... 14

*Dep't of Com. v. New York*,
  139 S. Ct. 2551 (2019) ............................................................................................ 15

*Dig. Props., Inc. v. City of Plantation*,
  121 F.3d 586 (11th Cir. 1997) ................................................................................... 3

*Dream Defenders v. DeSantis*,
  No. 4:21cv191-MW/MAF, 2021 WL 4099437 (N.D. Fla. Sept. 9, 2021) ......................... 19

*Erickson v. Pardus*,
  551 U.S. 89 (2007) .................................................................................................. 6

*Evans v. Georgia Reg'l Hosp.*,
  850 F.3d 1248 (11th Cir. 2017) ................................................................................. 6

*Glenn v. Brumby*,
  663 F.3d 1312 (11th Cir. 2011) ...................................................................... 7, 10, 12

*Grimm v. Gloucester Cnty. Sch. Bd.*,
  972 F.3d 586 (4th Cir. 2020) ......................................................................... 7, 10, 14

*Hecox v. Little*,
  479 F. Supp. 3d 930 (D. Idaho 2020) ............................................................... 8, 11, 12

*Jacobson v. Fla. Sec'y of State*,
  974 F.3d 1236 (11th Cir. 2020) ......................................................................... 15, 16

*James v. City of Douglas, Ga.*,
  941 F.2d 1539 (11th Cir. 1991) ............................................................................... 16

*K.P. v. LeBlanc*,
  627 F.3d 115 (5th Cir. 2010) ................................................................................... 19

*Karnoski v. Trump*,
  926 F.3d 1180 (9th Cir. 2019) ................................................................................. 10

*Koziara v. City of Casselberry*,
  392 F.3d 1302 (11th Cir. 2004) ............................................................................. 5, 6

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ................................................................................................. 3

*McDonald v. City of Pompano Beach, Fl.*,
  No. 20-60297-CIV-ALTMAN/Hunt, 2021 WL 3741646 (S.D. Fla. Aug. 24,
  2021) ..................................................................................................................... 5

*Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration*,
  304 F.3d 1076 (11th Cir. 2002) ................................................................................. 6

*Midrash Sephardi, Inc. v. Town of Surfside,*
    366 F.3d 1214 (11th Cir. 2004) ........................................................... 3

*Mississippi Univ. For Women v. Hogan,*
    458 U.S. 718 (1982) ........................................................................... 10

*Okpalobi v. Foster,*
    244 F.3d 405 (5th Cir. 2001) ............................................................. 15

*Romero v. Drummond Co., Inc.,*
    480 F.3d 1234 (11th Cir. 2007) ......................................................... 16

*Shands Jacksonville Med. Ctr. v. Azar,*
    No. 3:19-cv-579-J-32MCR, 2020 WL 3073906 (M.D. Fla. June 10, 2020) ....................... 13

*Shelly v. Kramer,*
    334 U.S. 1 (1948) .............................................................................. 13

*Support Working Animals, Inc. v. Governor of Fla.,*
    8 F.4th 1198 (11th Cir. 2021) ........................................................... 18

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ................................................................... 4, 5, 13

*Whalen v. Roe,*
    429 U.S. 589 (1977) .......................................................................... 17

## Constitutions

U.S. Const. art. III ..................................................................................... 2, 5

U.S. Const. amend. I .................................................................................... 13

U.S. Const. amend. XIV ............................................................................... 10

Florida State Constitution Article IV, Section 1a ............................................. 18

## Statutes

Civil Rights Act of 1964, tit. VII, Pub. L. No. 88-352, 78 Stat. 241 ("Title VII") ...................... 7

Education Amendments of 1972, Pub. L. No. 92-318, 86 Stat. 235 ("Title IX") ...................... 6, 7

Equal Access Act, 20 U.S.C. § 4071 *et seq.* (1984) ............................................... 4

FLA. STAT. § 382.016(1)(b) (2014) ........................................................... 16, 17

FLA. STAT. § 1006.205(3)(a) (2021) ............................................................ 3, 4

FLA. STAT. § 1006.205(3)(b) ...................................................................................... 8

FLA. STAT. § 1006.205(4)(a) .................................................................................... 14

FLA. STAT. § 1007.35 (2018) ..................................................................................... 4

**Other Authorities**

*Bylaws of the Florida High School Athletic Association, Inc., 2019-20 Edition*
   *(2019)* ................................................................................................................ 9

*Bylaws of the Florida High School Athletic Association, Inc., 2021-22 Edition*
   *(2021)* ............................................................................................................ 9, 18

Dr. Pat Griffin & Helen Carroll, *NCAA Inclusion of Transgender Student-Athletes*
   *(August 2011)* ................................................................................................... 9

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 6

Fla. Admin. Code R. 64V-1.003(2)(c) ....................................................................... 8

Florida Executive Order 21-175 ............................................................................. 18

*The Code Book for Student Conduct, Broward County Public Schools*
   *(July 28, 2021)* ................................................................................................... 4

## I.     Introduction

This case is about a thirteen-year-old girl's ability to play school sports and to continue to be with her teammates as she has done for years.  It is not, as defendants incorrectly characterize it, an attack on the rights of all girls and women to play female sports under fair conditions or a challenge to sex-segregated athletic teams.  Rather, it is an as-applied challenge to a law that targets the plaintiff D.N. solely because she is a transgender girl and precludes her from playing girls sports in school.  Two other district courts—one in Idaho and the other in West Virginia—have recently enjoined similar state statutes because they violated the federal constitutional and statutory rights of the plaintiffs in those cases.

Plaintiff's claim here is ripe because she will suffer a concrete, identifiable injury if she is not allowed to play on any girls sports teams for the rest of this school year and when she is in high school.  Defendants have refused to agree that the term "secondary schools," an undefined term in the Florida statute, does not apply to middle school students.  Thus, her ability to play on a school sports team is at risk and she faces imminent injury.  She also faces immediate, ongoing harm from the threat of litigation, invasion of her privacy, and the harassment that will occur if her transgender status is revealed by defendants without her consent.

Although defendants argue that plaintiff has brought a facial challenge, this is incorrect. The complaint seeks relief only as to this plaintiff.  This Court need not decide, at this early stage of the litigation, all the contested issues in this case.  Indeed, defendants' motion reads more like a summary judgment motion than it does a motion directed at the pleadings.  The issues defendants raise, including the physiological differences between boys and girls and the impact of hormones on transgender girls, are not susceptible to resolution based solely on memoranda submitted by counsel, especially at the pleading stage.  Rather, those issues, including whether the state's

1

purported interest in fairness in women's athletics requires exclusion of this individual plaintiff from girls sports, require evidence about plaintiff's transition and her specific situation, along with expert submissions for the Court to consider. Defendants' objections, made solely through counsel in their memoranda, are not based on science, and are rooted in stereotypes and bias. To the extent that defendants want to challenge the science on which plaintiff relies in bringing this action, they will have ample opportunity to do so, either by making a motion for summary judgment after expert disclosure or at trial. This Court should let the case proceed.

The complaint adequately alleges that each of the defendants is responsible for educational decisions and for regulating plaintiff's involvement in school sports. Although several of the defendants seek to disclaim their role in enforcing the challenged statute, no implementing regulations have been issued. Nor does the statute explain exactly how it will be enforced. Therefore, at this early stage of the litigation, all defendants should remain in the case.[1]

The recently enacted statute here was intended to bar a transgender girl such as plaintiff from playing on a school sports team. It is broad and sweeping in its prohibition and this plaintiff is directly impacted by the law. Because the plaintiff has standing, the claim is ripe, and the complaint properly pleads multiple causes of action, the motion to dismiss should be denied.

## II.    Plaintiff's Claims Are Ripe And Are Jurisdictionally Proper

Defendants argue that all of plaintiff's claims are unripe because she is a middle school student and wants to continue to play sports in high school. For Article III standing, the plaintiff must: (1) "suffer[] an 'injury in fact' — an invasion of a legally protected interest which is (a) concrete and particularized . . . (b) and actual or imminent, not conjectural or hypothetical"; (2) demonstrate "a causal connection between the injury and the conduct complained of" which must

---

[1] Plaintiff and counsel for Superintendent Runcie have stipulated to dismiss claims against him. That stipulation has been filed with the Court.

2

be "fairly traceable to the challenged action of the defendant[s]"; and (3) the injury must be "likely" as opposed to "merely speculative" and will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

A suit may be maintained when there is an immediate threat of injury. This immediacy requirement means only that the anticipated injury occur within some fixed period of time in the future — a "reasonably fixed and specific in time" event that is "not too far off." *ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1193-94 (11th Cir. 2009). When deciding a claim's ripeness, the Eleventh Circuit "primarily [considers:] 1) the fitness of the issues for judicial decision, and 2) the hardship to the parties of withholding court consideration." *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1224 (11th Cir. 2004). The ripeness doctrine "protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes." *Dig. Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997).

It is uncontested that plaintiff will not be able to play, absent a court ruling otherwise, when she begins high school, which will occur shortly after the trial date in this matter. This Court has entered a scheduling order setting the trial date as June 20, 2022 (Trial Sch. Order 1, ECF No. 41). That date is consistent with the consent order on scheduling that was jointly submitted, after extensive conferencing and negotiation on the dates for discovery, expert submissions, and court filings. Having agreed that discovery and motion practice in this matter would take about nine months, defendants should not be permitted to argue that it is too soon for plaintiff to commence litigation.

In addition, although the complaint contains facts concerning the impact of this statute on plaintiff when she enters high school, the statute itself covers sports in "secondary school." FLA.

STAT. § 1006.205(3)(a)(2021) ("SB 1028"). SB 1028 does not define the term "secondary school" and its meaning is ambiguous under Florida law. Furthermore, defendants' motion does not state whether they intend to apply the law to plaintiff as a middle school student. Plaintiff has been unable to get any assurances from defendants, as part of the negotiation of the scheduling order, that they will allow her to play in middle school until such time as this Court issues a decision.

In 2016, the Eleventh Circuit in *Carver Middle Sch. Gay-Straight All. v. Sch Bd. Of Lake Cnty, Fla.*, 842 F.3d 1324, 1333 (11th Cir. 2016) held that the Equal Access Act, which used the term "secondary education" (as defined in state law) applied to a Florida middle school. Additionally, some Florida statutes include middle schools in their definitions of secondary schools. *See, e.g.*, FLA. STAT. § 1007.35 (2018) (addressing assistance for underrepresented students in secondary schools). In Broward County, the public school district implicated here, the public school Code of Conduct refers to "secondary students" as students in grades 6-12. *See The Code Book for Student Conduct, Broward County Public Schools*, at 60-72, 76 (July 28, 2021).[2] Given this ambiguity, the broad wording in the statute, and defendants' unwillingness to agree that the statute does not cover plaintiff, she should be permitted to litigate her case now since her risk of injury is not abstract. In the event that the Court concludes that plaintiff was required to allege the possible application of the law to her as both a middle school student and then subsequently as a high school student, plaintiff should be permitted to amend.

An allegation of future injury may suffice if "the threatened injury is certainly impending or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (internal citations and quotations omitted). A plaintiff satisfies the injury in

---

[2] The Code Book for Student Conduct is available at:
https://www.browardschools.com/cms/lib/FL01803656/Centricity/Domain/13726/Final%20Code%20SY%202021-2022%2007_28_21%20ADA%20Compliant%20v1.pdf

fact requirement when she "alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder." *Id.* at 159 (internal citations and quotations omitted). Lastly, the pre-enforcement nature of a suit is not "troubling" when the plaintiff has "alleged an actual and well-founded fear that the law will be enforced against them." *Id.* at 160 (internal quotations omitted).

There is no authority to suggest that "as-applied challenge[s] to a statute must fail *on the merits* when the statute has not been enforced against the plaintiff." *McDonald v. City of Pompano Beach, Fl.*, No. 20-60297-CIV-ALTMAN/Hunt, 2021 WL 3741646, at *1,*8 (S.D. Fla. Aug. 24, 2021). Instead, "although pre-enforcement suits regularly face standing challenges, courts universally recognize that plaintiffs *can*, consistent with Article III, advance pre-enforcement claims." *Id.* Generally, Article III standing analysis is "separate from, and will often have very little to do with, the viability of [plaintiff's] claim on the merits." *Id.*

Here, the injury to plaintiff is neither speculative nor is there any hardship to defendants in requiring that this litigation move forward. In fact, if this Court were to adopt defendants' incorrect ripeness argument, plaintiff would miss an entire year (or two) of school sports before her claim could be adjudicated. If she has to wait to file until she enters high school, the trial will not begin until the summer of 2023. She will lose at least a year of school sports participation, something she can never get back. She also will lose the connections to her teammates and the positive benefits from involvement in school athletics. This case does not present an abstract controversy, but rather a concrete problem.[3]

*Koziara v. City of Casselberry*, 392 F.3d 1302 (11th Cir. 2004), cited by defendants, is factually distinguishable. In that case, the Court concluded that there was no injury in fact because

---

[3] The suggestion that this case is premature because plaintiff might not enter high school next year is unwarranted since she is an exemplary student. It also is not appropriate to consider this on a motion directed at the pleadings.

the plaintiff, a dancer at an adult establishment, was only indirectly impacted by the establishment's license revocation.  The Court described her as a "concerned bystander." *Id.* at 1306.  That is not the situation in the instant case, where the law is directly targeted at plaintiff herself.  *Ass'n for Children for Enf't of Support, Inc. v. Conger*, 899 F.2d 1164, 1165 (11th Cir. 1990), also cited by defendants, does not warrant dismissal here since the challenged exclusion in that case was the result of actions by counsel and not a state actor.

## III.   Plaintiff Has Pled A Valid Claim Under Title IX

In deciding a motion to dismiss under Rule 12(b)(6), the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardu*s, 551 U.S. 89, 94, (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).  The court, when considering a motion under Rule 12(b)(6) to dismiss, must give all plausible inferences in plaintiff's favor to the facts as alleged. *See, e.g., Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration*, 304 F.3d 1076 (11th Cir. 2002).  A plaintiff is entitled to an "an opportunity to amend her complaint one time unless doing so would be futile." *Evans v. Georgia Reg'l Hosp.*, 850 F.3d 1248, 1254 (11th Cir. 2017).

Defendants do not argue, nor could they, that Title IX does not apply to determinations made by state and local actors overseeing the participation of girls and women playing on publicly funded school sports teams.  Nor do they argue that Title IX does not generally apply to the schools in Broward County or even to schools elsewhere in Florida.  Rather, they misstate plaintiff's contentions in this lawsuit by arguing that she is broadly challenging the longstanding existence of separate school sports teams for girls and boys.  That is not the plaintiff's argument.  Plaintiff

specifically contends this new statute unlawfully discriminates against her based on gender and gender identity and is contrary to controlling Supreme Court precedent.

Defendants further mischaracterize plaintiff's position by arguing that plaintiff is seeking to add provisions into Title IX by requiring schools to consider gender identity as part of the school sports selection process. Defendants' arguments cannot be reconciled with the Supreme Court's ruling in *Bostock v. Clayton County, Georgia*, which held that in the context of Title VII, "it is impossible to discriminate against a person for being . . . transgender without discriminating against that individual based on sex." *Bostock v. Clayton Cnty, Georgi*a, 140 S.Ct. 1731, 1741 (2020). Thus, it is plaintiff's central position in this case that defendants are discriminating against her based on sex by treating her differently than cisgender girls. Plaintiff is not seeking to rewrite Title IX, but rather to apply existing sex discrimination precedent to this case.[4]

Defendants' citation to the dissenting opinions in *Bostock* ignores the fact that the dissenting views did not prevail. *Bostock* is controlling, and defendants' citation to *Adams v. Sch. Bd. of St. Johns Cnty*, 3 F.4th 1299 (11th Cir. 2021) to suggest that the Eleventh Circuit has conclusively ruled on the issues presented here fails to note that the order granting rehearing vacated the panel opinion. — F.4th —,  2021 WL 3722168 (Mem) (11th Cir. Aug. 23, 2021).[5] Moreover, in many different contexts, federal courts have repeatedly recognized that discriminatory and unequal treatment of transgender individuals should be analyzed under prevailing case law involving discrimination based on sex. *See, e.g., Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 616-19 (4th Cir. 2020); *Glenn v. Brumby*, 663 F.3d 1312, 1315-20 (11th

---

[4] The Department of Justice (DOJ) also has taken the position that Title IX covers gender identity. In a memorandum, the DOJ states that there is nothing "persuasive in the statutory text, legislative history, or case law to justify a departure from *Bostock*'s textual analysis and the Supreme Court's longstanding directive to interpret Title IX's text broadly." https://www.justice.gov/crt/page/file/1383026/download

[5] The Eleventh Circuit opinion in *Adams*, that was cited by defendants, applied heightened scrutiny and overturned a restrictive bathroom policy holding that it violated the equal protection rights of a transgender student.

Cir. 2011); *B.P.J. v. W. Va. State Bd. of Educ.*, No. 2:21-CV-00316, 2021 WL 3081883 *1,*6 -*7 (S.D.W. Va. July 21, 2021); *Hecox v. Little*, 479 F. Supp. 3d 930, 975 (D. Idaho 2020).[6]

Defendants further seek to avoid the application of *Bostock* by arguing that the statute here is "neutral as to gender identity." It is hard to understand this argument when the statute itself bases assignment to a girls sports team on the birth certificate that was submitted at or near the time of birth. By preventing plaintiff from presenting her amended birth certificate reflecting her current—legally recognized—gender identity (*see* FLA. ADMIN. CODE R. 64V-1.003(2)(c) (2021)), the law targets her as a transgender girl. There would be no logical reason to require that she produce an outdated birth certificate that was issued at or close to the time of birth if the state did not intend to exclude her, as a transgender girl, from participating on girls sports teams. The state neither proffers any other reason for this restrictive definition of the documentation that a student must provide nor can there logically be one. By enacting a law that, in effect, excludes transgender girls from girls teams, the statute treats plaintiff worse than girls who are not transgender. *See Bostock*, 140 S.Ct. at 1741-42. It also treats her worse than transgender boys, who can play on any team. *See* FLA. STAT. § 1006.205(3)(b).

The defendants' motion also incorrectly argues that plaintiff is seeking preferential treatment based on transgender status. Plaintiff here is seeking only equal treatment — the opportunity provided to other girls to play on school sports teams. Similarly, plaintiff is not arguing, as defendants suggest, that gender identity is the critical criteria for assignment of students to athletic teams. Rather, it is defendants, and the challenged statute, that have injected the issue of gender identity into the sports team assignment process. Plaintiff's position is that she belongs

---

[6] In *Hecox*, the Ninth Circuit has remanded for development of a factual record on the issue of mootness. Case 20-35813, Dkt Entry 143 (June 24, 2021). The trial court's injunction was not vacated as part of that remand order.

on the girls team because she is a girl, and the State of Florida has already recognized her as such by issuing an amended birth certificate that identifies her as a girl.

Defendants' position is that, at least for school sports, total exclusion of transgender girls from girls teams is necessary to maintain "fairness" in girls/women's sports.  When the time comes for a resolution on the merits, plaintiff will establish that the assertion has no legitimate application as to her and that it is unsupported by athletic standards, science, or any other valid evidence. Furthermore, defendants' broad arguments in this motion are undermined by the fact that they also acknowledge that the International Olympic Committee has created standards to allow transgender athletes to compete. *See* Defs.' Memorandum in Support of its Mot. To Dismiss at 11-12. Similarly, the National Collegiate Athletic Association ("NCAA") has created standards that allow transgender athletes to play on teams that align with their gender identity. *See* Dr. Pat Griffin & Helen Carroll, *NCAA Inclusion of Transgender Student-Athletes*, at 13 (August 2011). [7] And prior to the enactment of the challenged law, the Florida High School Athletics Association ("FHSAA") had a procedure that determined, on an individual basis, whether a transgender female athlete could play on a girls team. Recent bylaws permit similar procedures. *See Bylaws of the Florida High School Athletic Association, Inc., 2019-20 Edition*, at 72-73 (2019); *see also Bylaws of the Florida High School Athletic Association, Inc.*, *2021-2022 Edition* at 72-73 (2021).[8]

---

[7] NCAA standards are available at:
https://ncaaorg.s3.amazonaws.com/inclusion/lgbtq/INC_TransgenderHandbook.pdf

[8] 2019-2020 bylaws were previously available at
http://fhsaa.site/sites/default/files/1920_handbook_website_116.pdf, but no longer appear to be accessible.
FHSAA's 2021-2022 bylaws are available at: http://fhsaa.site/sites/default/files/1920_handbook_website_116.pdf

## IV.    The Complaint Sufficiently Pleads A Violation Of The Equal Protection Clause

Although defendants acknowledge that the complaint describes, in great detail, plaintiff's individual circumstances and that the complaint only seeks relief as to the individual plaintiff, defendants argue that this case somehow presents a facial challenge.[9]  It does not.

The Equal Protection Clause of the Fourteenth Amendment requires that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  Because this statute involves discrimination based on transgender status, at a minimum intermediate scrutiny is required (*see Karnoski v. Trump*, 926 F.3d 1180, 1201 (9th Cir. 2019); *Grimm*, 972 F.3d at 608; *Glenn*, 663 F.3d at 1315-16), and the government must show that "the classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." *Mississippi Univ. For Women v. Hogan*, 458 U.S. 718, 724 (1982).

Defendants argue that plaintiff is not being treated differently because she is being treated the same as any person who was designated as male at birth.  This argument consistently uses the term "biological males," a term that has no established legal meaning.  It also ignores plaintiff's current legal recognition as a female by the State of Florida in her birth certificate, regardless of what may have appeared on her birth certificate filed at or close to the time of her birth.

Defendants proffer as a state interest the desire to foster athletic opportunities for females. While redressing past discrimination against women and girls is an important governmental interest, defendants do not explain why excluding plaintiff, who is a female, furthers this interest. In fact, defendants' argument about expanding athletic opportunities for girls is undermined by

---

[9]  Defendants also note that plaintiff is not questioning the statute's application to transgender males. As this is an as-applied challenge, plaintiff is focused on how the law impacts her as a transgender girl.  Furthermore, there is no bar in this statute on transgender males playing on teams for boys or men.

plaintiff's exclusion since it denies her the opportunity to play on a girls team. As a girl, plaintiff should be able to experience the sports opportunities that defendants repeatedly argue are important for girls to have. [10]  It is ludicrous to suggest that plaintiff could play on the boys team given the circumstances of her gender identity and transition, as described in the complaint.  She would risk being bullied, harassed, and probably injured were she to play with boys.  She has been playing on the girls team for years and is recognized as a girl by teachers and peers.  Thus, the statute will deprive plaintiff of all athletic team experiences within the school system.

Furthermore, defendants' state interest argument about the inherent unfairness of allowing transgender girls to play on girls sports teams is undermined by their own memoranda, which acknowledges that there may be some transgender individuals who, through early hormone therapy, can change their physiology.  Their motion fails to establish that the criteria chosen by the state for girls sports team assignment — sex assigned at birth as indicated on a birth certificate — is substantially related to the achievement of their stated objective. *See Corbitt v. Taylor*, 513 F. Supp. 3d 1309, 1315-1316 (M.D. Ala. 2021) (state cannot rely on overbroad generalizations about men and women).  In any event, whether the statute—as applied to plaintiff—furthers an important government interest, is not susceptible to resolution based on legal memoranda alone.  Rather, it warrants expert affidavits and testimony to elucidate plaintiff's specific situation. [11]

The fact that the statute does not use the term transgender does not, as defendants argue, mean that the law is not motivated by discriminatory animus.  The only reason the statute would focus on submission of birth certificates at or near the time of birth would be to make a distinction

---

[10] *Clark v. Arizona Interscholastic Assoc.*, 695 F.2d 1126 (9th Cir. 1982), relied on by defendants, does not answer the question posed in this case since it does not involve a girl who wanted to play on a girls sports team.

[11]  The amicus brief submitted on behalf of the Christian Coalition of Florida contains inaccurate information about transgender individuals.  Plaintiff's expert affidavits and trial testimony will refute these claims, which have no scientific or medical legitimacy.  Similar arguments have been rejected by two other district courts which considered similar statutes.  See, *BPJ* and *Hecox*, *supra*.

between transgender girls, who may have changed their gender marker on their birth certificates, and cisgender girls, whose gender marker on the birth certificate issued at or near the time of birth has not changed.

Furthermore, the law is well-settled that "[a] plaintiff can show discriminatory intent through direct or circumstantial evidence." *Glenn*, 663 F.3d at 1320. Here, the purpose of the statute is evident from the wording of the statute which limits sports opportunities for girls whose current gender identity is different from that on the birth certificate that was filed at or near the time of birth. If the purpose was truly to ensure that only girls are playing on girls sports teams, the state could have required the production of any birth certificate, including one that has been legally amended. The fact that the legislature did not do this is, at a minimum, circumstantial evidence that they were focused on excluding transgender girls. To the extent that defendants now assert some non-discriminatory purpose to the statute, that is an issue to be explored at trial, but not grounds to dismiss at the pleading stage.

Finally, although plaintiff strongly asserts that the resolution of the alleged competitive advantage issue is inappropriate at this stage because of the need for expert testimony and proof as to plaintiff's specific situation, other courts that have addressed this issue have rejected arguments similar to those asserted by defendants in this case. *See Hecox*, 479 F. Supp. 3d at 951-52; *see also B.P.J.*, 2021 WL 3081883, at *6. As the court noted in *Hecox*, there is compelling scientific and medical evidence that sports are not jeopardized by allowing transgender girls like plaintiff to play. *Hecox*, 479 F. Supp. 3d at 979-982.

## V.   Plaintiff's Due Process Claim Is A Valid Pre-Enforcement Challenge

### A.   Plaintiff Properly Alleges Injury In Fact

Plaintiff has played and intends to play girls soccer at her public school and intends to try out for the girls volleyball team this upcoming winter season. Therefore, plaintiff has not only

alleged an "intention to engage in a course of conduct arguably affected with a constitutional interest," *Susan B. Anthony List v. Driehaus*, 573 U.S. at 159 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)), she is actively engaging in such conduct. Every day plaintiff participates in school athletics on the girls team, she plays under the threat of litigation. The initiation of such litigation would trigger onerous and invasive discovery that would undermine her constitutional due process right to privacy. It also might well result in a determination by the governmental actors named in this case that she cannot continue to play. *See generally, Bell v. City of Winter Park, Fla.*, 745 F.3d 1318 (11th Cir. 2014) (municipal ordinance cannot grant private citizens unrestrained discretion to involve the government in First Amendment restrictions); *cf. Shelly v. Kramer*, 334 U.S. 1 (1948).

Additionally, there exists a credible threat of the statute's enforcement against plaintiff. The presence of private actors and statutorily created private rights of action *strengthens*, not weakens, plaintiff's constitutional standing. As the Supreme Court stated, "[t]he credibility of [the] threat is bolstered by the fact that authority to file a complaint . . . is not limited to a prosecutor or an agency" and the threat of enforcement presents a "real risk" when "the universe of potential complainants is not restricted to state officials who are constrained by explicit guidelines or ethical obligations [.]" *Susan B. Anthony List*, 573 U.S. at 164. Here, the "universe of potential complainants" is substantial, since the law is broadly written as to who can bring such an action.

Lastly, plaintiff should not be penalized for the statute's recency. Although to date there is no known enforcement concerning plaintiff's sports participation via private right of action under the statute, the law is effective as of July 1, 2021, and the school year began only a few short weeks ago in Broward County. *Contra Shands Jacksonville Med. Ctr. v. Azar*, No. 3:19-cv-579-J-

13

32MCR, 2020 WL 3073906 *1, *3 (M.D. Fla. June 10, 2020) (finding threat of enforcement of the challenged act unlikely because Health and Human Services had the sole authority to impose sanctions under the challenged act and had not done so in the past fifteen years). A lack of enforcement to date does not dispel the imminence of plaintiff's alleged harm.

Defendants argue that plaintiff should wait until an action is filed by a student who objects to plaintiff playing and further wait until a discovery request is filed before asserting her constitutional rights. However, the defendants have not been willing to assure plaintiff that if another student asked if plaintiff were a transgender student who was playing on the girls team, that they would refrain from revealing her identity. Once this personal information was provided, the injury to her privacy would already have occurred. Plaintiff should not be required to live with the threat of her identity and confidential information being revealed, especially given the high-profile nature of the current case in which it is likely that her playing status will be challenged.[12] Furthermore, defendants ignore the significant invasion of privacy and potential consequences such as harassment and bullying that might occur if the plaintiff's gender identity is involuntarily revealed to third parties by the defendants. Other courts have recognized the risks to young people, both physical and emotional, of having their gender identity "outed." *See Grimm*, 972 F.3d at 599; *D.T. v. Christ*, No. CV-20-00484-TUC-JAS, 2021 WL 3419055 (D. Ariz. Aug. 5, 2021).

**B.     Plaintiff's Injury Is Traceable To And Redressable By Defendants**

In their motion to dismiss, defendants' improperly attempt to interpret portions of the statute to excise any state involvement. *See* FLA. STAT. § 1006.205(4)(a). Defendants, however, have neither promulgated any regulations to effectuate the statute's intent nor explained how they

---

[12] Defendants and plaintiff are entering into a confidentiality order about the discovery in this litigation, but that is different from the information defendants might provide if another student challenged plaintiff's right to play on a team or asked to verify plaintiff's gender identity.

14

will handle actions brought by private parties. If an action is brought, the government actors named here would necessarily have to be involved either because they allowed plaintiff to play on a girls sports team or because, after a suit was filed, they refused to allow her to play. They would have to provide information as to whether plaintiff was transgender and disclose her gender marker listed on the amended birth certificate and on the birth certificate that was issued at or close to plaintiff's birth.

Plaintiff's mandated disclosure of sensitive and private health information is both causally connected to state conduct and redressable by defendants. Defendants fail to acknowledge that traceability to government actors may be established where the injuries involve wrongful acts of a third party. *See Dep't of Com. v. New York*, 139 S. Ct. 2551, 2566 (2019) ("Respondents' theory of standing thus does not rest on mere speculation about the decisions of third parties; it relies instead on the predictable effect of Government action on the decisions of third parties."). Defendants therefore cannot shield themselves from plaintiff's due process claim on procedural grounds by merely referencing the statute's private action component.

Defendants cite two cases to support their lack of redressability argument that are factually inapposite. In the Fifth Circuit's *Okpalobi v. Foster* opinion, the court found that, under the challenged act, "no state official has any duty or ability to do anything." 244 F.3d 405, 427 (5th Cir. 2001). Similarly, in *Jacobson*, the Eleventh Circuit found the plaintiffs lacked standing because they sued the Florida Secretary of State and not Florida's Supervisors of Electors, the appropriate entity for suit under Florida law. *See Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1253 (11th Cir. 2020).

In both *Okpalobi* and *Jacobson*, the defendant state actors who were sued did not have the authority to redress plaintiff's claimed injury. *See Okpalobi*, 244 F.3d at 409, 426-27 (concerning

15

a law that provided a private tort remedy against doctors for damage occasioned by abortion);

*Jacobson*, 974 F.3d at 1253-54 (determining that "the Supervisors are independent officials under

Florida law who are not subject to the Secretary's control.  The Supervisors are constitutional

officers who are elected at the county level by the people of Florida; they are not appointed by the

Secretary . . . " and that "[b]ecause the Supervisors are independent officials not subject to the

Secretary's control, their actions to implement the ballot statute may not be imputed to the

Secretary for purposes of establishing traceability.").  Here, there is not an issue with redressability

because all the named defendants have defined responsibilities for educational and sports decisions

in Broward County and in the State of Florida generally, and can rectify plaintiff's injury.  In

paragraphs 7-12 of the complaint, plaintiff outlines the specific statutory and constitutional

responsibilities of the named defendants as it relates to education and sports team assignment.

(Complaint ¶¶ 7-12 ECF No. 1.)   In response to specific challenges made by defendants FHSSA

and Governor DeSantis, their roles are further discussed in points VII and VIII.

**VI.     Plaintiff Has Sufficiently Alleged An Invasion Of Privacy Claim**

There are significant privacy interests involved in changing one's gender marker under

Florida law, which provides that the original birth certificate shall be sealed and replaced by the

amended document.  *See* FLA. STAT. § 382.016(1)(b) (2014).  The decision to seal information

means that the information is sufficiently sensitive so that "[a] party's privacy . . . interest in [the]

information [has overcome] the interest of the public in accessing the information."  *Romero v.*

*Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007).

Defendants acknowledge that the Eleventh Circuit has recognized an informational right

of privacy, which is similar to the right plaintiff claims is implicated in this case.  *See James v.*

*City of Douglas, Ga.*, 941 F.2d 1539, 1543-44 (11th Cir. 1991).  They distinguish this case by

arguing, without citing any controlling authority, that disclosure of a birth certificate that was

issued at or near the time of birth would not implicate privacy rights.  Their argument, however, ignores Florida law which seals the birth certificate if it was subsequently amended to reflect a new gender marker.  *See* FLA. STAT. § 382.016(1)(b).

*Whalen v. Roe*, 429 U.S. 589 (1977), on which defendants rely, involved the disclosure of information designed to combat the illegal market for "dangerous" prescription drugs.  There, the Supreme Court held that the law was a rational legislative response that might have a deterrent effect on potential drug abuse.  *See id.* at 597-98.  No such argument can be made here, especially since the birth certificate that plaintiff will be expected to produce has been replaced by an amended certificate.  Furthermore, as previously noted, the question of whether this statute, as drafted, furthers a substantial government interest is not susceptible to resolution at this early stage of the case.

## VII.    The FHSAA Is A Proper Defendant In This Case

The FHSAA seeks dismissal of the complaint, alleging that plaintiff is now only a middle school student and that she has not alleged that the specific high school she will attend is a member school of the FHSAA.  The complaint, however, does allege that she attends school in a district where the schools are members of the FHSAA, even if she has not identified the specific high school she intends to attend. [13]  If this Court concludes that the name of the high school that plaintiff plans to attend is required, plaintiff should be permitted to amend to add that information.

The FHSAA also misstates plaintiff's claim by arguing that the opportunity to participate in school athletic activities is not, standing alone, a constitutionally protected right.  The State of Florida provides such opportunities to students and the FHSAA, as it acknowledges, sets eligibility

---

[13]  Plaintiff filed this case under initials to protect her privacy and specifying the school she attends may reveal her identity.  The parties intend to enter into a confidentiality agreement to protect plaintiff's identity, and specific information identifying her school will be provided as part of discovery once the confidentiality agreement is signed.

requirements for students to participate in athletic competitions at its member schools. *See Bylaws of the Florida High School Athletic Association, Inc., 2021-22 Edition*, at 7 (2021) ("Each school must control its interscholastic athletic programs by FHSAA rules and regulations.").[14]  Plaintiff's claim is that having undertaken that role, the FHSAA cannot do so in a discriminatory manner. Plaintiff also notes the irony of the FHSAA's argument since prior to this law being enacted, it had a protocol in place for evaluating participation requests from transgender athletes.   Thus, before this law was enacted and this litigation began, the FHSAA was more than willing to play a role in helping school teams determine how and when transgender athletes can play. *See id.* at 72-73.  The FHSAA cannot persuasively argue that they do not have a concrete role in this process or will not have one once plaintiff's trial is concluded in the summer and she is trying out for the high school girls team, whose activities are regulated by the FHSAA.

## VIII.   Governor DeSantis Is A Proper Defendant In This Case

To overcome the doctrine of sovereign immunity, the plaintiff must show, "at the very least, that the official has the authority to enforce the particular provision that he has challenged, such that an injunction prohibiting enforcement would be effectual." *Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1201 (11th Cir. 2021).  Governor DeSantis, in a different context, has recently invoked his executive authority under Article IV, Section 1a of the Florida State Constitution, to cut off funding to schools.  *See* Florida Executive Order 21-175 (2021) (cutting off funding to schools that seek to implement mask mandates in response to the COVID-19 pandemic).  Having just recently invoked that authority and sought control over the distribution of funds to local schools, Governor DeSantis should not now be permitted to argue, at least before discovery has occurred, that he has no enforcement authority over the issues presented by the

---

[14] Available at: https://fhsaa.com/documents/2021/6/29//2122_handbook_web.pdf?id=1775

challenged statute here. As other circuits have noted, the enforcement authority necessary to overcome sovereign immunity need not be direct but may include informal elements "involving compulsion or constraint." *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010). Furthermore, the fact that other governmental agencies may also be involved in the process does not mean the Governor has no role. *See generally Dream Defenders v. DeSantis*, No. 4:21cv191-MW/MAF, 2021 WL 4099437 *1, *11 (N.D. Fla. Sept. 9, 2021).

## IX.   Hearing Requested

This case presents novel and important issues and plaintiff respectfully requests that Rosalyn Richter, who has been admitted *pro hac vice*, be permitted to argue this case. Plaintiff requests 30 minutes for oral argument or such time as the Court will allow. Although Ms. Richter is not admitted in the State of Florida, she is very familiar with the issues in this case and is an experienced advocate. She has familiarized herself with the local rules.

Plaintiff believes that oral argument will provide an opportunity to clarify the exact nature of the relief that plaintiff seeks, and to address defendants' misstatements as to the nature of plaintiff's claims. It also will provide an opportunity to answer any questions the Court might have.

Because of the current COVID-19 situation, plaintiff's counsel respectfully requests that the Court permit oral argument by Ms. Richter through whatever remote platform the Court chooses. If the Court directs in person argument, Ms. Richter will be available for in person argument at the Court's convenience.

## X.   Conclusion

For the foregoing reasons, defendants' motion to dismiss should be denied in all respects and this matter should proceed.

DATED: September 20, 2021

Respectfully submitted,
/s/ Jason A. Ross
Jason A. Ross
Fla. Bar No. 59466
Jason.Ross@arnoldporter.com
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue NW
Washington, D.C. 20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999

Rosalyn Richter *
Arnold & Porter Kaye Scholer LLP
250 W. 55th St.
New York, N.Y. 10019
Telephone: (212) 836-8000
Facsimile: (212) 836-9689
Rosalyn.Richter@arnoldporter.com

Kent A. Yalowitz *
Arnold & Porter Kaye Scholer LLP
250 W. 55th St.
New York, N.Y. 10019
Telephone: (212) 836-8000
Facsimile: (212) 836-9689
Kent.Yalowitz@arnoldporter.com

Jason Starr *
Human Rights Campaign Fund
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762
Facsimile: (202) 628-0517
Jason.Starr@hrc.org

Sarah Warbelow *
Human Rights Campaign Fund
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 572-8981
Facsimile: (202) 628-0517
Sarah.Warbelow@hrc.org

* Admitted pro hac vice

Counsel for D.N., by her next friends,
Jessica N., mother, and Gary N., father