IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 21-61344-CIV-ALTMAN/Hunt

D.N., by her next friends, JESSICA N.,
mother, and GARY N., father,

       *Plaintiff,*

    v.

GOVERNOR RONALD DESANTIS, in his
official capacity as Governor of Florida;
FLORIDA HIGH SCHOOL ATHLETIC
ASSOCIATION; BROWARD COUNTY
SCHOOL BOARD; SUPERINTENDENT
ROBERT RUNCIE, in his official
capacity as Superintendent of Broward
County Public Schools; FLORIDA
STATE BOARD OF EDUCATION; and
COMMISSIONER RICHARD CORCORAN,
in his official capacity as
Commissioner of Education,

       *Defendants.*

PROPOSED INTERVENOR SELINA SOULE'S
MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT

## TABLE OF CONTENTS

Table of Authorities ...................................................................................................... iii

Introduction ................................................................................................................. 1

Factual Background ...................................................................................................... 2

Argument ..................................................................................................................... 4

    I.    Soule satisfies the requirements for intervention as of right because her request is timely, her interests are affected by this litigation, and her arguments differ from the state's.................................................................. 5

        A.  Soule's motion to intervene is timely.................................................... 5

        B.  Soule has a direct, substantial, and legally protectable interest in fair, safe competition because she is a female athlete protected by the Sports Act and benefits from equal opportunities for women. ............... 7

        C.  Soule's interests could be impaired by this litigation which threatens to invalidate the Sports Act and to undermine equal opportunity for women. ............................................................................................... 11

        D.  The current parties do not adequately represent Soule's interests because she will emphasize Title IX's requirements, gender identity's lack of constitutional protection, and her own unique experience competing against male athletes. ....................................................... 14

    II.    Alternatively, the Court should grant Soule's permissive intervention. ..... 18

Conclusion.................................................................................................................. 19

Certificate of Service.................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**

*Adams by & through Kasper v. School Board of St. Johns County,*
  968 F.3d 1286 (11th Cir. 2020) ............................................................... 23

*Adams v. School Board of St. Johns County, Florida,*
  3 F.4th 1299 (11th Cir. 2021) .................................................................. 23

*American Federation of State, County & Municipal Employees Council 79*
  *v. Scott,*
  717 F.3d 851 (11th Cir. 2013) ................................................................. 19

*Athens Lumber Company v. Federal Election Commission,*
  690 F.2d 1364 (11th Cir. 1982) ............................................................... 11

*Cascade Natural Gas Corporation v. El Paso Natural Gas Corporation,*
  386 U.S. 129 (1967) ................................................................................ 17

*Chiles v. Thornburgh,*
  865 F.2d 1197 (11th Cir. 1989) ............................................ 12, 13, 17, 20

*Citizens United v. Federal Election Commission,*
  558 U.S. 310 (2010) ................................................................................ 18

*Clark v. Ariz. Interscholastic Association,*
  695 F.2d 1126 (9th Cir. 1982) ................................................................ 13

*Clark v. Putnam County,*
  168 F.3d 458 (11th Cir. 1999) ................................................................ 15

*Cohen v. Brown University,*
  991 F.2d 888 (1st Cir. 1993) ................................................................... 13

*Diaz v. Southern Drilling Corporation,*
  427 F.2d 1118 (5th Cir. 1970) ................................................................ 12

*Federal Savings & Loan Insurance Corporation v. Falls Chase Special*
  *Taxing District,*
  983 F.2d 211 (11th Cir. 1993) ........................................................... 10, 19

*Florida v. Becerra,*
  No. 8:21-cv-839-SDM-AAS, 2021 WL 3209861 (M.D. Fla. July 29, 2021) ..... 14, 16

*Georgia v. U.S. Army Corps of Engineers,*
   302 F.3d 1242 (11th Cir. 2002) ........................................................................ 10

*Grutter v. Bollinger,*
   188 F.3d 394 (6th Cir. 1999) .......................................................................... 13

*Hardin v. Kentucky Utilities Company,*
   88 S. Ct. 651 (1968) ...................................................................................... 16

*Hecox v. Little,*
   479 F. Supp. 3d 930 (D. Idaho 2020) ...................................................... 12, 18, 23

*Huff v. Commissioner of IRS,*
   743 F.3d 790 (11th Cir. 2014) ........................................................................ 12

*John Doe No. 1 v. Reed,*
   561 U.S. 186 (2010) ...................................................................................... 18

*McCormick ex rel. McCormick v. School District of Mamaroneck,*
   370 F.3d 275 (2d Cir. 2004) ...................................................................... 12, 21

*Meek v. Metropolitan Dade County Florida,*
   985 F.2d 1471 (11th Cir. 1993) ...................................................................... 19

*Mountain Top Condominium Association v. Dave Stabbert Master
   Builder, Inc.,*
   72 F.3d 361 (3d Cir. 1995) ............................................................................ 15

*Mt. Hawley Insurance Company. v. Sandy Lake Properties, Inc.,*
   425 F.3d 1308 (11th Cir. 2005) .................................................................. 16, 17

*Office Depot, Inc. v. National Union Fire Insurance Company of Pittsburgh, P.A.,*
   No. 09-80554-CIV, 2010 WL 431886 (S.D. Fla. Feb. 3, 2010) ............................ 11

*Purcell v. BankAtlantic Financial Corporation,*
   85 F.3d 1508 (11th Cir. 1996) ........................................................................ 10

*Reeves v. Wilkes,*
   754 F.2d 965 (11th Cir. 1985) ........................................................................ 10

*Roberts v. Colorado State Board of Agriculture,*
   998 F.2d 824 (10th Cir.1993) ........................................................................ 21

*Sierra Club v. Espy,*
   18 F.3d 1202 (5th Cir.1994) .......................................................................... 14

iv

*Soule v. Connecticut Association of Schools, Inc.*,
　　No. 3:20-cv-00201 (RNC), 2021 WL 1617206 (D. Conn. April 25, 2021) .... 6, 13, 21

*South Dade Land Corporation v. Sullivan*,
　　155 F.R.D. 694 (S.D. Fla. 1994) ............................................................................ 22

*South Florida Equitable Fund LLC v. City of Miami, Florida*,
　　No. 10-21032-CIV, 2010 WL 2925958 (S.D. Fla. July 26, 2010) ......................... 13

*Southwest Center for Biological Diversity v. Berg*,
　　268 F.3d 810 (9th Cir. 2001) .................................................................................. 14

*TIG Specialty Insurance Company v. Financial Web.com, Inc.*,
　　208 F.R.D. 336 (M.D. Fla. 2002) ........................................................................... 15

*Trbovich v. United Mine Workers of America*,
　　404 U.S. 528 (1972) ......................................................................................... 19, 20

*United States v. South Florida Water Management District*,
　　922 F.2d 704 (11th Cir. 1991) ............................................................................... 14

## Rules

Fed. R. Civ. P. 24(b)(1) ................................................................................................. 23

Fed. R. Civ. P. 24(b)(3) ................................................................................................. 23

## INTRODUCTION

On June 29, 2021, Plaintiff D.N. filed this lawsuit challenging Florida's recently enacted Fairness in Women's Sports Act, which seeks to ensure equal opportunities for women in sports. After hearing about this lawsuit, Selina Soule realized it could undermine the Sports Act and imperil her ability to fairly compete as a collegiate athlete in Florida. Soule asks this Court for permission to intervene in this case as of right or permissively under Federal Rule of Civil Procedure 24. This request should be granted for three reasons.

First, Soule's request is timely. This litigation is still in its early stages. The parties are currently briefing a motion to dismiss. Significant discovery has not yet occurred, and a scheduling order issued just last week.

Second, Soule has a significant interest in preserving equal athletic opportunities for herself and other female athletes. She currently competes on the track and field team at Florida Atlantic University and benefits from a system designed to ensure that women can compete in athletics on a safe and fair playing field. D.N.'s request to invalidate the Sports Act directly and personally imperils Soule's interest in fair competition. It puts her at risk of competing on the track against male athletes from other Florida schools, against other teams with male athletes, and against male athletes at her own school seeking to take her spot on the team. It also undermines her ability to fairly access all the other benefits that come from being a female collegiate athlete—ranging from scholarships to wellness resources. Selina should know. She already has competed against and lost in high school to two male athletes who identify as women. *See Soule v. Connecticut Association of Schools, Inc.*, No. 3:20-cv-00201 (RNC), 2021 WL 1617206 (D. Conn. April 25, 2021).

And third, Defendants cannot adequately represent Soule's interests because she represents a unique perspective and puts forward different legal arguments and different litigation goals. Allowing Soule to intervene guarantees a thorough defense of the Sports Act. This Court deserves to hear from the very persons most

protected by the Sports Act, most affected by attempts to undermine the Act, and the most motivated to aggressively defend the Act.

## FACTUAL BACKGROUND

Proposed intervenor Selina Soule is an elite female athlete. Competing in track and field has been her life-defining passion. Ex. A, Soule Decl. ¶ 9. Soule first began running when she was just five years old and has pursued athletic training and competition ever since. *Id*. ¶ 8. After a distinguished high school athletic career, Soule will now run track for the Florida Atlantic University (FAU) in Boca Raton, Florida. *Id*. ¶ 2. Soule is dedicated to the integrity of female sports and wholeheartedly supports Florida's Sports Act.

Soule grew up as the daughter of multi-sport athletes. *Id*. ¶ 3. Her mom first coaxed her onto the ice rink at Rockefeller Center when she was just three years old. *Id*. ¶ 4. Figure skating continued to feature prominently in Soule's athletic life through high school. *Id*. ¶ 5. Though she loved the beauty and grace of the sport, as well as its athleticism, Soule was less enthusiastic about its subjective scoring system. *Id*. ¶ 7. Track, however, offered the objectivity she craved. *Id*.

Soule first started running in the community summer "fun runs" with her mom at five years old. *Id*. ¶ 8. Even at that young age, Soule was convinced of two things: she loved to run, and she hated running long distances. *Id*. Sprinting became her sweet spot. Community fun runs turned into the Hershey Track and Field meets where Soule first set foot on a track. *Id*. ¶ 9. From that moment, eight-year-old Soule was hooked. *Id*. She realized that she was fast. *Id*. And she realized that she loved to sprint.

By the time Soule reached high school, she quickly became the permanent starter on the 4x200-meter relay team, as well as the school's best long jumper. *Id*. ¶ 14. As an elite athlete, her high school athletic career included being a ten-time All-Conference Honoree recipient, a five-time state title holder, a three-time All New England award recipient, a four-time National qualifier, and she holds five high school records. *Id*. ¶ 15.

But her high school athletic career was not without challenges. Soule had the deflating experience of running against first one, and then two, male athletes who identify as female athletes during all four years of high school. *Id.* ¶ 17. And it cost her. For example, at the 2019 State Open Championship, Soule missed qualifying for the state championship 55-meter final by just one spot, and the chance to qualify for the New England Regional championship by just two spots. *Id.* ¶ 20. Those two spots were taken by males. *Id.* She went on to lose repeatedly to these male individuals competing in girls' track. *Id.* ¶¶ 21, 23.

As a long-time athlete, Soule is familiar with the difference in strength and speed potential between comparably gifted and trained male and female athletes. Soule knows the frustration and heartbreak of losing to a male athlete with natural competitive advantages that no amount of dedicated training can overcome. *Id.* ¶ 22. All too often, she felt defeated before the race even began. Soule trains to win; not to place third and beyond. *Id.* Over her high school career, she lost opportunities to compete at world class tracks; opportunities to compete in front of college coaches; and opportunities to win titles. *Id.* ¶ 23. She knows this is true of many other female athletes in her state. *Id.* ¶ 24. She also watched with sadness as some girls changed their sporting events to avoid being forced to compete against males. *Id.* ¶ 22. And she watched with frustration as those two male athletes who identify as female won not just a handful, but a total of 15 women's state championship titles over the course of just three years in Connecticut. *Id.* ¶ 21.

Soule knew she had to stand up. *Id.* ¶ 25. After reaching out to school administrators and athletic association officials to no avail, Soule resorted to filing a federal lawsuit to protect the integrity of women's sports under Title IX. *Id.* ¶ 26. That lawsuit is still in progress elsewhere. *Id.* And because of her involvement in that lawsuit, she was invited to attend the bill signing of Florida's Sports Act in June 2021. *Id.* ¶ 42. Little did she know at the time that the Sports Act would later protect her too. *Id.*

Because of her personal experience with an unfair playing field in high school, Soule was eager to move on to fair competition in college. *Id.* ¶ 27. It was her

3

dream to run track for an NCAA Division 1 school. After a brief stint at the College of Charleston during a difficult COVID year, Soule received an offer to run for FAU. *Id*. ¶¶ 28-29. Eager to escape the cold Connecticut winters for Florida sunshine, Soule accepted and is now a member of the FAU track and field team. She competes in the 60-meter, 100-meter, 200-meter, and long jump events, and may also compete on the relay team. *Id*. ¶ 31. Being part of the team is quite an honor. *Id*. ¶ 32. And there are many additional side benefits to being a collegiate athlete: access to top-tier coaching, facilities, and equipment; consultation with nutritionists and dieticians; paid travel to games, academic support services; medical and wellness care; access to psychologists; access to the NCAA Student Assistance Fund; team gear and apparel; and the opportunity to make money on her own name, image, and likeness. *Id*.

But while there are real financial benefits to competing in women's sports, Soule has learned so much more than just how to run fast down a track or jump long distances. *Id*. ¶ 39. She has learned physical and mental toughness. She has learned perseverance and good sportsmanship. *Id*. She has learned that hard work pays off. *Id*. And that making sacrifices to play the sport you love reaps a lifetime of benefits.

To Soule, allowing a male to displace a deserving young woman from her sport, or her spot at the state championship meet, or on the podium, or in the scholarship pool defies the purpose of women's sports. *Id*. ¶¶ 45, 47. She wants to speak up not just for herself, but for other young women who may be afraid of retaliation or censorship. *Id*. ¶ 44. She knows that women have fought long and hard for equal athletic opportunities, and she wants to ensure that future generations of young girls with big dreams can continue to compete on a level playing field and reap all the benefits that sports have to offer. *Id*. ¶ 46.

ARGUMENT

Federal Rule of Civil Procedure 24 authorizes both intervention as of right and permissively. The Eleventh Circuit favors intervention and "[a]ny doubt concerning

the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action." *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993). Soule should be granted (I) intervention as of right as her motion is timely, she has a protectable interest directly affected by this litigation, and her arguments are unique from those of other parties. Soule also satisfies the requirements for (II) permissive intervention because her legal interests share common questions of law and facts with this case.

**I.   Soule satisfies the requirements for intervention as of right because her request is timely, her interests are affected by this litigation, and her arguments differ from the State's.**

The Eleventh Circuit evaluates a request to intervene as of right using four factors: "(1) [t]he application must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) the applicant must demonstrate that his interest is represented inadequately by the existing parties to the suit. *Athens Lumber Co. v. Fed. Election Comm'n*, 690 F.2d 1364, 1366 (11th Cir. 1982). And "[o]nce a party establishes all the prerequisites to intervention, the district court has no discretion to deny the motion." *Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1512 (11th Cir. 1996). Soule satisfies each requirement for intervention as of right.

**A.   Soule's motion to intervene is timely.**

Soule's motion to intervene is timely because this lawsuit is in its infancy. The Eleventh Circuit gauges timeliness by considering four factors: (1) how long the intervenor knew of the interest in the case before petitioning for leave to intervene; (2) the amount of prejudice that the existing parties in the lawsuit may encounter; (3) the extent of the prejudice the proposed intervenor may encounter if the leave to intervene is denied; (4) the existence of unusual circumstances weighing either for or against a determination that the application is timely. *Reeves v. Wilkes*, 754 F.2d

965, 968–69 (11th Cir. 1985). The obligation of timeliness "must have accommodating flexibility" toward the possible intervenor and the Court "to regulate intervention in the interest of justice." *Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1259 (11th Cir. 2002).

Soule clears the timeliness hurdle because this lawsuit began less than three months ago. The original complaint was filed on June 29, 2021. The Defendants moved to dismiss the complaint, which has not yet been fully briefed by the parties or decided by this Court.[1] No significant discovery—if any—has taken place, and this Court just entered a scheduling order last week. Intervention at this early stage would not delay the momentum of this lawsuit or prejudice the current parties.

In fact, courts regularly grant requests in similar time frames or even much later than Soule's request. *See Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (timely intervention and no prejudice to the parties when intervention motion filed seven months after the original complaint, three months after the original defendant moved to dismiss, and before discovery had begun); *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1125 (5th Cir. 1970) (motion to intervene timely when filed more than a year after lawsuit began because "there had been no legally significant proceedings ... other than the completion of discovery" and where the motion would not cause delay in the litigation); *Off. Depot, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*, No. 09-80554-CIV, 2010 WL 431886, at *2 (S.D. Fla. Feb. 3, 2010) (motion to intervene was timely when filed approximately seven months after the filing of the complaint).

Soule did not delay in filing her intervention either. She filed her motion fewer than three months after the complaint was filed. Choosing to intervene in a case of this nature is a substantial decision. Soule only became aware that this lawsuit endangered her rights to freely compete when she heard about the suit. Once she knew about it, Soule sought counsel and weighed her options carefully

---

[1] D.N.'s motion to dismiss response was due to the Court on September 20, 2021.

before making the decision to intervene and only intervened when absolutely necessary. Once she decided to intervene, she moved quickly. While she will be directly impacted by this litigation, Soule's circumstances in this case are unusual. She is currently involved in litigation in Connecticut and had to consider her options before immediately jumping into another case. She needed time to confirm her decision to intervene. But Soule knew she would suffer prejudice if she did not move to be included in this case. Her interests in participating in track at FAU could be substantially affected if the Sports Act is rescinded and she is again forced to compete on an uneven playing field.

Because Soule did not delay, there is no prejudice to any party from her intervention request. Soule has filed her motion to dismiss this case concurrently with this motion. Her motion is therefore timely.

### B. Soule has a direct, substantial, and legally protectable interest in fair, safe competition because she is a female athlete protected by the Sports Act and benefits from equal opportunities for women.

In addition to timeliness, a prospective intervenor must show a "direct, substantial, and legally protectible" interest in the action. *Chiles*, 865 F.2d at 1213. An intervenor must be at least a real party "in interest in the transaction which is the subject of the proceeding." *Id*. at 1213-14. But that interest does not have to "be of a legal nature identical to that of the claims asserted in the main action." *Id*. at 1214. This analysis about protectable interests is "flexible" and must "focus[] on the particular facts and circumstances" of the case. *Huff v. Comm'r of IRS*, 743 F.3d 790, 796 (11th Cir. 2014).

Other courts across the country have already addressed this situation and found "there is no question" that a woman's right to an equal athletic opportunity is a "legitimate and important government interest." *Clark v. Ariz. Interscholastic Ass'n*, 695 F.2d 1126, 1131 (9th Cir. 1982); *Cohen v. Brown Univ.*, 991 F.2d 888, 897 (1st Cir. 1993) ("Equal opportunity to participate lies at the core of Title IX's purpose); *McCormick ex rel. McCormick v. Sch. Dist. of Mamoreneck,* 370 F.3d 275, 286-95 (2d Cir. 2004) (Title IX's purpose is ensuring women have "[e]qual

7

opportunity to participate" in educational programs and activities). The government has an interest in "redressing past discrimination against women in athletics and promoting equality of athletic opportunity between the sexes." *Hecox v. Little*, 479 F. Supp. 3d 930, 952 (D. Idaho 2020).

Given this important interest, federal courts have unanimously permitted athletes to intervene in cases like this. For example, in *Hecox,* a male athlete challenged Idaho's sports-equity law that is similar to Florida's. *Id*. Two female collegiate athletes then sought to intervene to uphold the law, and the court granted their motion, both permissively and as of right. *Id*. at 955, 958. As the Idaho district court held, the proposed female athletes unquestionably have a protectable interest in keeping their equal athletic opportunities. *Id*. at 952. In fact, according to that court, a contrary decision would mean that neither the transgender plaintiff nor any other athlete had a protectable interest in this litigation's subject matter. *Id*.

In the same vein, Soule and two other Connecticut female athletes challenged a state athletic association policy that enabled males to compete against females in athletics. This effectively deprived these young women of honors, recognitions, opportunities to advance, and opportunities to win. *See Soule*, 2021 WL 1617206. In response, two male athletes then sought to intervene to defend the policy, and the district court permitted that intervention, saying the two male athletes had a protectable interest in the subject matter of the litigation. Order Granting Motion to Intervene, *Soule v. Connecticut Association of Schools, Inc.*, No. 3:20-cv-00201 (RNC), 2021 WL 1617206 (D. Conn. April 25, 2021), ECF No. 93.

If male athletes can intervene to defend the law enabling them to compete against Soule and other female athletes in Connecticut, then surely Soule can intervene to defend the law protecting Soule's ability to compete on a level playing field against other women in Florida. Beneficiaries of equal-opportunity laws have an interest to see those laws upheld, whether men in Connecticut or women in Florida. *See also Grutter v. Bollinger*, 188 F.3d 394, 396-98 (6th Cir. 1999) (allowing minority students to intervene in lawsuit challenging university's affirmative-action policies because those minority students had a "substantial legal interest in

educational opportunity" which includes preventing a decline in enrollment of minority students).

Courts in the Eleventh Circuit have adopted a similar logic. When a law or policy specifically benefits a particular group, those groups have a strong interest in seeing the law upheld. *United States v. S. Fla. Water Mgmt. Dist.*, 922 F.2d 704, 710 (11th Cir. 1991) (intervention granted where group of farm corporations and agricultural organizations would be directly affected by the court's interpretation of a state regulation); *Fla. v. Becerra*, No. 8:21-cv-839-SDM-AAS, 2021 WL 3209861, at *2 (M.D. Fla. July 29, 2021) (permitting Texas's intervention in Florida suit against the CDC when CDC sailing regulation directly impacted Texas's economy, its ability to obtain a reduced tax revenue, and its ability to mitigate damages); *S. Fla. Equitable Fund LLC v. City of Miami, Fla.*, No. 10-21032-CIV, 2010 WL 2925958, at *3 (S.D. Fla. July 26, 2010) (citing *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir.1994)) (permitting timber purchasers' association to intervene in an environmental groups' suit against the U.S. Forest service where the association members had "legally protectable property interests in existing timber contracts that are threatened by the potential bar on even-aged management").

Courts outside this Circuit agree too. *See Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820-21 (9th Cir. 2001) (allowing intervention where proposed intervenor "made a prima facie showing that he has a substantial interest as a third-party beneficiary of the assurances and approval process set out in the [implementation agreement] that could be affected if the [implementation agreement] were invalidated").

Like the beneficiaries of the laws in these cases, Soule has a legally protectible interest in preserving the Sports Act which protects her equal opportunity to compete in collegiate athletics. Indeed, Soule is a competitive track and field athlete with a direct and experiential interest in the Act. Ex. A ¶ 2, 29. As a female athlete who competes at a public university on an NCAA Division 1 team, Soule is the Act's intended beneficiary. *Id*. ¶ 29-30. She directly benefits from the Sports Act because it protects her right to equal athletic opportunities shielded from

male competitors. *Id*. ¶ 44-45. Soule wants to engage in female-only competitions and maintain a competitive environment shielded from physiologically-advantaged male participants. *Id*. ¶ 47. And Soule already lost out on opportunities in high school as male participants competed against her and won. *Id*. ¶ 23. She strenuously wishes to avoid repeating that deflating experience again. *Id*. ¶ 22.

Allowing males to compete in the female category also depletes the resources set aside for female athletes. Florida law dictates gender equity in intercollegiate athletics and specifically designates "[a]n equitable portion of all separate athletic fees shall be designated for women's intercollegiate athletics." Fla. Stat. § 1006.71(2)(a) (2021). If D.N. were permitted to compete in the female category, it would diminish the state's resources specifically set aside for women. *See TIG Specialty Ins. Co. v. Fin. Web.com, Inc.*, 208 F.R.D. 336, 338 (M.D. Fla. 2002) (citing *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995) ("an intervenor's interest in a specific fund is sufficient to entitle intervention in a case affecting that fund."). Women's benefits also extend past Florida's funding. Governor DeSantis recently signed H.B. 845 which allows college athletes to be compensated for their name, image, or likeness. H.B. 845, 2021 Leg. (Fla. 2021). College athletes now have the opportunity to compete for compensation for their position on a college athletics team. Every male on a female sports team displaces a woman and diminishes the economic benefits a female athlete could have gained from her inclusion on that team.

Being on a collegiate sports team also provides students with benefits provided by individual schools. Student athletes have access to free apparel, travel, tutoring, mental health services, private training, private facilities, nutrition plans, and even cooking classes, just to name a few.[2] Florida's Sports Act was created to ensure that women had a chance to compete and to be champions in their own

---

[2] Florida State Athletics Student Athlete Handbook, 2020-21, https://bit.ly/3CfWLer; FAU Student-Athlete Handbook, 2019-2020, https://bit.ly/3hFqupc; Gators Student Athlete Handbook, 2019-2020, https://bit.ly/3CmRWQi.

sports. Displacing women from their own teams removes their ability to fairly compete and also strips them of the ability to access these benefits from merely being included on the team. *Hardin v. Kentucky Utilities Co.*, 88 S. Ct. 651, 654 (1968) ("when the particular statutory provision invoked does reflect a legislative purpose to protect a competitive interest, the injured competitor has standing to require compliance with that provision.")

What's more, women like Soule have important, legally protected interests in the outcome of this case. And like the minority-student intervenors in *Grutter*, Soule also has a legally protectible interest in preserving fair competition for female athletes generally in Florida. In *Grutter*, the minority students not only had an interest in personally attending certain schools but also in ensuring that the entire educational system was fair and equitable and promoted equal access and diversity in general. So too, Soule has an interest in ensuring fair and equitable participation and athletic opportunity for athletes like her.

### C.   Soule's interests could be impaired by this litigation which threatens to invalidate the Sports Act and to undermine equal opportunity for women.

The third criterion for intervention as of right is closely linked to the second. When an intervenor has an interest in the litigation, the litigation's outcome often impairs that interest. *Chiles*, 865 F.2d at 1214 (11th Cir. 1989) ("Whether a movant is situated in such a way that the disposition of the case ... may impede or impair its ability to protect his interest is "closely related" to the nature of its interests."). And, if a proposed intervenor "would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Fla. v. Becerra*, No. 8:21-cv-839-SDM-AAS, 2021 WL 3209861, at *2 (M.D. Fla. July 29, 2021); (quoting *Cascade Natural Gas Corp. v. El Paso Natural Gas Corp.*, 386 U.S. 129, 134, n.3 (1967). "The proposed intervenor must show that it has an interest in the subject matter of the suit, that its ability to protect that interest may be impaired by the disposition of the suit, and that existing parties in the suit cannot adequately protect that interest." *Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005).

This case could substantially affect Soule's interests in fair competition. If D.N. prevails, Soule would be stripped of the protections designed to ensure she can fairly compete in female sports. D.N. has challenged the law on constitutional and Title IX grounds. While not entirely clear, D.N.'s complaint suggests that D.N. is seeking facial relief. D.N. complains that the Sports Act "treats transgender girls and transgender women differently" than "transgender boys and men" and that the Act "allows other individuals who claim that they have been denied athletic opportunities to bring claims against transgender girls." Compl., Doc.1, ¶¶ 70, 73. D.N. also complains that the very "wording of the law" and officials' "contemporaneous public statements" indicate the law targets transgender individuals. *Id*. at ¶¶ 39-41, 72.

These allegations indicate that D.N. views the Act as facially problematic because of its legislative history and its textual distinctions, which in turn supposedly harm transgender individuals in Florida in general, not just D.N. because of D.N's particular circumstances. *See also Id*. at ¶¶ 62-64 (complaining that the Act "contains a definition of sex that directly contradicts federal law" and therefore "violates Title IX"); ¶¶ 71-72 (complaining that Defendants have no interest "in regulating school sports in the matter at issue here based solely on gender assigned at birth"). These objections to the Act's very text and legislative history suggest D.N. seeks to invalidate the entire Act.

While the complaint appears to seek facial relief, "[t]he label is not what matters." *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010). After all, "the distinction between facial and as-applied challenges is not so well defined." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010). This Court could provide broader facial relief, regardless of the labels D.N.'s complaint uses—just as the Supreme Court did in *Citizens United*. *Id*. at 330 (expressing skepticism whether, on appeal, "a party could somehow waive a facial challenge while preserving an as-applied challenge").

What's more, D.N. may also try to obtain "quasi-relief" or some other relief beyond D.N. to a broader group or category. *Am. Fed'n of State, Cnty. & Mun. Emps.*

*Council 79 v. Scott*, 717 F.3d 851, 863 (11th Cir. 2013) (relief that is "quasi-facial" in nature is "relief that reaches beyond plaintiff[] in a case."). For example, D.N. may try to obtain relief on behalf of all males who identify as women or ask this Court to exempt males from the Sports Act who start testosterone suppression or puberty blockers. Either way, Soule faces the very real possibility that D.N. may seek relief or this Court may provide relief well beyond D.N.'s particular circumstances. And that in turn means this ligation can very well affect Soule and other female athletes in Florida and imperil their interests in equal opportunity.

Finally, Soule also has a protected interest in the Sports Act even if D.N. only seeks and obtains as-applied relief. D.N. argues in the complaint that sports are necessary for young people and are a "vital part of the educational experience." Compl., Doc. 1 ¶ 28. D.N. seeks to have a right to compete on the girls' soccer team according to D.N.'s "true identity." *Id.* ¶ 29. And D.N. views the Act as problematic because it contains "a definition of sex" that D.N. considers problematic. *Id.* ¶ 29, 63. This legal argument cannot be limited to D.N.'s particular circumstances. Indeed, if this Court accepts this rationale, it could easily be applied to any transgender athlete trying to compete against any female athlete in Florida, including Soule.

The situation in Idaho bears this out. There, a male athlete who identified as female challenged a law like Florida's and the district court dismissed the athlete's facial claims. *Hecox*, 479 F. Supp. 3d at 969-71. But the court then went through its as-applied Equal Protection analysis and facially enjoined Idaho's law anyway. *Id* at 975-89 (granting motion for preliminary injunction in full); Mot. for Prelim. Inj. Doc 22, 2, *Hecox*, 479 F. Supp. 3d 930 (preliminary injunction motion that sought to enjoin government officials "from enforcing any of the provisions of House Bill 500…"); *see also* Mem. Op. & Order, Doc. 67, PageID #: 1345, *B.P.J. v. West Virginia State Board of Education* (providing as-applied relief at preliminary-injunction stage but noting that "[w]hether the law is facially unconstitutional is an issue raised in the Complaint and will be resolved at a later stage of litigation"). This

result just shows that arguments like D.N.'s cannot be easily cabined and necessarily lead to broader relief and rulings that affect those beyond the parties.[3]

So, no matter how D.N. cuts it, if D.N. prevails, Soule will be affected by this litigation. She would be left without legal protections under the Sports Act. She would lose out on opportunities and resources. She would likely face the option of competing against a male athlete, or not competing at all—a demoralizing decision she has had to make in the past. She therefore has a significant interest which this case could impair.

**D.     The current parties do not adequately represent Soule's interests because she will raise arguments and pursue strategies they will not.**

As for the fourth requirement for intervention as of right, the Defendants do not adequately represent Soule's unique interest in the continuing operation of the Sports Act. Soule offers different arguments and different perspectives that Defendants do not and cannot.

Proposed intervenors need only show that representation of their interests "'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972); *see also Chiles*, 865 F.2d at 1214–15; *see also Meek v. Metro. Dade Cnty., Fla.*, 985 F.2d 1471, 1477 (11th Cir. 1993) ("it merely requires the presumed result unless some evidence is placed before the court tending to rebut it."). A proposed intervenor "should be treated as the best judge of whether the existing parties adequately represent his or her interests, and ... any doubt regarding adequacy of representation should be resolved in [movant's] favor." 6 Moore's Federal Practice § 24.03[4][a] (3d ed. 1997); *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993). This allows the "court to resolve all related disputes in a single action." *Fed. Sav. & Loan Ins. Corp.*, 983 F.2d at 216.

---

[3] No matter what relief D.N. seeks, whether facial, quasi facial, or as-applied, those claims should fail. *See* Ex. B, Proposed Intervenor's Mot. to Dismiss 3-4.

Of the six named defendants, two are Broward County officials or entities (Broward County School Board and Superintendent Robert Runcie) with no connection to Soule's particular interests. Soule is not a resident of Broward County. She resides in Palm Beach County. And in the Defendants' Motion to Dismiss, Superintendent Robert Runcie argues that his inclusion in this lawsuit is redundant as the Broward County School Board is already named. Def.s' Mot. to Dismiss, Doc. 33, 23-24. These County Defendants do not represent her interests.

The four other defendants are state officials (Governor Ronald DeSantis and Commissioner Richard Corcoran) and state agencies (the Florida State Board of Education and the Florida High School Athletic Association). And two of these Defendants (Governor DeSantis and the FHSAA) both argue they should be removed from this lawsuit. Def.s' Mot. to Dismiss, Doc. 33, 24-27. The Governor lacks the enforcement authority to impose the Sports Act, and D.N. does not have standing to sue the FHSAA. *Id*. D.N. also did not allege any wrongful conduct from the FHSAA. *Id*. If this Court accepts these arguments and dismisses these Defendants, they cannot represent Soule's interests either.

But no matter which Defendants stay or go, none can adequately represent Soule's interests. Soule only has to show that the representation from the current Defendants "may be" inadequate. *Trbovich*, 404 U.S. at 538 n.10. And her burden to show that is minimal. The Defendants here have different litigation interests and different litigation arguments from these State Defendants that make her interests different from the State's. Any doubts about the adequacy of representation should be decided in Soule's favor.

Both D.N. and Soule reside in Florida and the Defendants are all Florida State officials and organizations. Because both D.N. and Soule are Floridians, the State Defendants cannot adequately represent the interests of both parties equally, as the 11th Circuit found in *Clark v. Putnam County*. 168 F.3d 458, 461–62 (11th Cir. 1999) (holding that defendant county commissioners could not adequately represent proposed intervenors and plaintiffs' interests equally and simultaneously

because both plaintiffs and proposed intervenors were Putnam County citizens with opposed interests).

What's more, Soule will offer different arguments and strategies in this litigation, and the pending motions to dismiss bear this out. *First*, the State Defendants argue that Title IX's regulations permit sex-separated athletic teams based on biological sex to promote the interests of fairness for girls, but they do not stress that Title IX *requires* sex-separated athletic teams.[4] Def.s' Mot. to Dismiss, Doc. 33, at 7. In contrast, Soule will highlight that Title IX not only permits, but requires separate sports teams for girls and boys in contests of speed, strength, or physical contact. *See* Ex. B, Proposed Intervenor's Mot. to Dismiss 17-18. She will argue that "[t]reating girls differently regarding a matter so fundamental to the experience of sports—the chance to be champions—is inconsistent with Title IX's mandate of equal opportunity for both sexes." *McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 295 (2d Cir. 2004). Plus, in many sports, Title IX's mandate of non-discrimination could not be achieved with sex-blind programs. Failing to provide females with separate sports teams with equality in competition violates Title IX. *See* 44 Fed. Reg. at 71,417–418; *see also Roberts v. Colo. State Bd. of Agric.*, 998 F.2d 824, 829 (10th Cir.1993).

*Second*, State Defendants fail to explicitly argue that gender identity is not a protected class under Title IX and the Equal Protection Clause. Throughout the complaint, D.N. conflates gender identity and sex. By likening gender identity with sex, D.N. is attempting to gain heightened scrutiny for these claims. Pl.'s Compl., Doc 1 ¶¶ 17, 18, 22, 30. But there is no controlling case law that establishes gender

---

[4] The State Defendants mention in passing that Title IX "in some circumstances" requires sex-separation in sports teams but never explain when or why. Def.s' Mot. to Dismiss, Doc. 33, 7. But Soule will argue that Title IX requires sex-separation in the vast majority of sports, which involve strength, speed, or physical contact to ensure women's equal athletic opportunities. Ex. B at 24-25.

identity as a protected class.[5] Gender identity is therefore a classification that should be evaluated under the rational-basis standard. *See* Ex B. at 9-10. And Florida's Act easily passes this rational-basis standard. Florida's interest in enforcing the Sports Act is to ensure fairness for women and girls in sports. *Id.* at 15-16. And D.N.'s arguments would negate all women's sports and undermine sex-based distinctions in countless laws and countless contexts. Florida's method for promoting fairness in women's sports is constitutional. *Id.* at 16.

*Third*, State Defendants fail to raise the implications of D.N.'s arguments and requested relief. If this Court granted D.N.'s requested relief and invalidated the Act that protects fairness in women's sports, it would set a dangerous precedent for female athletics and the very category of "female" as defined by biology in law, from athletics, to showers, to female homeless shelters, to prisons. *See* Ex. B at 11-12. But lawsuits such as this one threaten women's opportunities in athletics and threaten women's opportunities, safety, and privacy in many other contexts too. *Id.* By highlighting these dangers, Soule will provide a unique perspective on these issues, both personally—as she has personally had her equal opportunities stripped away by male athletes—and on behalf of other women too.

*Fourth*, Soule's history as a female athlete who has lost to male athletes and as a female athlete protected by Florida's Act shows that she has a "special expertise" about the subject of this litigation that will permit her to "represent that special interest in a manner the remaining Defendants could not adequately meet." *S. Dade Land Corp. v. Sullivan*, 155 F.R.D. 694, 697 (S.D. Fla. 1994). The Act's protections guard Soule personally and unfair competition at the collegiate level has

---

[5] The Eleventh Circuit initially heard and decided *Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty*. 968 F.3d 1286, 1299 (11th Cir. 2020) (whether dividing students based on biological sex is a violation of the Equal Protection Clause and Title IX). But once the panel issued its decision, the panel amended its opinion and removed the reference of Title IX, vacating the previous ruling. The 11th Circuit then granted an en banc rehearing and therefore vacated the second panel opinion. *Adams v. Sch. Bd. of St. Johns Cnty., Fla.*, 3 F.4th 1299 (11th Cir. 2021), reh'g en banc granted, No. 18-13592, 2021 WL 3722168 (11th Cir. Aug. 23, 2021).

and will harm her personally. *See supra* § I.B (highlighting what Soule may lose if Act invalidated). The State leaders and institutions cannot fully replicate this experience or knowledge or adequately represents Soule's interests even if Defendants generally agree with those interests.

    *Finally, Hecox* and *Soule*, the two cases in the country most similar to this one, granted intervention as of right and a permissive intervention. *Hecox*, 479 F. Supp. 3d 930 at 955; *Soule*, 2021 WL 1617206. Just as the government officials in those cases did not adequately represent the intervenors' interests, Defendants do not adequately represent Soule's interests here.

## II.    Alternatively, the Court should grant Soule's permissive intervention.

    Along with satisfying the requirements for intervention as of right, proposed intervenor Soule also qualifies for permissive intervention. Federal Rule of Civil Procedure 24(b)(1) provides that "[o]n timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." In making this decision, a court should also consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Soule satisfies these requirements for three reasons.

    *First*, as discussed above, Soule timely filed this motion with no prejudice or delay to the original parties. She has filed a responsive pleading and her participation will provide no obstruction to effective litigation by the parties. *See supra* § I.A.

    *Second*, Soule's involvement provides a more complete airing of the issues in dispute in this lawsuit. Soule's legal issue "shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b)(1), as her interests situate and compel her to defend Florida's Sports Act.

    *Finally*, Soule, unlike the Defendants, has a personal connection to this issue and a unique experience to share. She can provide an unheard perspective and make arguments this Court has not heard, thereby aiding in the disposition of the case. Her application satisfies the conditions for permissive intervention.

CONCLUSION

This case raises important legal issues for Floridians and specifically for female athletes in Florida that will be impacted by this Court's decision. This Court should hear from the voices most protected by Florida's Sports Act and most affected were the Act invalidated. For these reasons, Soule should be permitted to intervene, as of right or permissively, to defend the Sports Act's legality.

**CERTIFICATE OF GOOD FAITH CONFERENCE; CONFERRED BUT UNABLE TO RESOLVE ISSUES PRESENTED IN THE MOTION**

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has made reasonable efforts to confer with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to resolve the issues. The State Defendants consent to this motion to intervene. The Broward County and Athletic Association Defendants have not responded to requests to confer made via email on September 17, 2021 and via phone on September 20, 2021. Plaintiff does not consent to this motion.

*Joseph S. Van de Bogart*
Joseph S. Van de Bogart, Esq.
*Counsel for Proposed-Intervenor*

Respectfully submitted this 21st day of September, 2021.

*Joseph S. Van de Bogart*
Joseph S. Van de Bogart, Esq.
Florida Bar No. 084764
Van de Bogart Law, P.A.
2850 North Andrews Avenue
Fort Lauderdale, FL 33311
Telephone: (954) 567-6032
Facsimile: (954) 568-2152
joseph@vandebogartlaw.com

Christiana Holcomb
D.C. Bar No. 176922*
Alliance Defending Freedom
440 First Street NW, Suite 600
Washington, D.C. 20001
Telephone: (202) 393-8690
Facsimile: (202) 347-3622
cholcomb@adflegal.org

Jonathan Scruggs
Arizona Bar No. 030505*
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
Telephone: (480) 444-0020
Facsimile: (480) 444-0028
jscruggs@adflegal.org

Ryan Bangert
Texas Bar No. 24045446*
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
Telephone: (480) 444-0020
Facsimile: (480) 444-0028
rbangert@adflegal.org

*Counsel for Proposed-Intervenor*
*\*Pro Hac Vice application pending*

### CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2021, a true and correct copy of the foregoing was electronically filed with the Clerk of Court by using the CM/ECF filing system, which will send electronic notice of such filing to all counsel of record.

*Joseph S. Van de Bogart*
Joseph S. Van de Bogart, Esq.
Florida Bar No. 084764
Van de Bogart Law, P.A.
2850 North Andrews Avenue
Fort Lauderdale, FL 33311
Telephone: (954) 567-6032
Facsimile: (954) 568-2152
joseph@vandebogartlaw.com

*Counsel for Proposed-Intervenor*

20