**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

---

D.N., by her next friends, JESSICA N.,
mother, and GARY N., father,

                               Plaintiff,

            v.

GOVERNOR RONALD DESANTIS,
in his official capacity as Governor of
Florida; *et al.*,

                           Defendants.

**Case No. 21-61344-CIV**
**ALTMAN/Hunt**

---

## PLAINTIFF'S OPPOSITION TO PROPOSED INTERVENOR
## SELINA SOULE'S MOTION TO INTERVENE

**TABLE OF CONTENTS**

**Page**

INTRODUCTION.................................................................................................................1

ARGUMENT.......................................................................................................................2

I.     SOULE DOES NOT MEET THE REQUIREMENTS FOR INTERVENTION OF RIGHT ........................................................................................................................2

        A.    Soule's Motion Is Untimely in the Unique Circumstances of this Case.................3

        B.    Soule Has Not Shown She Has A Legally Cognizable Interest in this Case...........5

        C.    Soule Has Not Shown that Resolution of This Action Will Impair Her Rights.......9

        D.    Soule Has Not Shown That the Existing Parties Are Inadequate.........................11

II.    THE COURT SHOULD DENY SOULE'S MOTION FOR PERMISSIVE INTERVENTION ...................................................................................................14

III.   SOULE'S MOTION IS PROCEDURALLY DEFECTIVE ..........................................16

CONCLUSION.................................................................................................................17

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adams v. Sch. Bd. of St. Johns Cty.*,
 3 F.4th 1299 (11th Cir.), *reh'g en banc granted*, 9 F.4th 1369 (11th Cir. 2021) .................. 8

*Adana Investing, Inc. v. Forrest Cap. Partners, Inc.*,
 No. 15-24038-Civ-COOKE/TORRES, 2016 WL 7438832 (S.D. Fla. Jul. 12,
 2016) .......................................................................................................................... 14

*Am. Fed'n of State, Cnty. & Mun. Emps. Council 79 v. Scott*,
 717 F.3d 851 (11th Cir. 2013) ...................................................................................... 11

*Arvida Corp. v. City of Boca Raton*,
 59 F.R.D. 316 (S.D. Fla. 1973) ....................................................................................... 6

*Ashwander v. TVA*,
 297 U.S. 288 (1936) (Brandeis, J., concurring) ............................................................ 11

*Athens Lumber Co. v. Fed. Election Comm'n*,
 690 F.2d 1364 (11th Cir. 1982) ................................................................................. 5, 14

*Bake House SB, LLC. v. City of Miami Beach*,
 No. 17-20217-CV-LENARD/GOODMAN, 2017 WL 2645760 (S.D. Fla. June
 20, 2017) .................................................................................................................... 12

*Bethune Plaza, Inc. v. Lumpkin*,
 863 F.2d 525 (7th Cir. 1988) ........................................................................................ 10

*Bostock v. Clayton County*,
 140 S. Ct. 1731 (2020) .................................................................................................... 8

*Brenner v. Scott*,
 298 F.R.D. 689 (N.D. Fla. 2014) ........................................................................ 6, 14, 15

*Broadrick v. Oklahoma*,
 413 U.S. 601 (1973) ...................................................................................................... 11

*Burke v. Ocwen Fin. Corp.*,
 833 F. App'x 288 (11th Cir. 2020) ................................................................................ 12

*Calloway v. Westinghouse Elec. Corp.*,
 115 F.R.D. 73 (M.D. Ga. 1987) ...................................................................................... 7

ii

*Cascade Natural Gas Corp. v. El Paso Natural Gas Co.,*
  386 U.S. 129 (1967) ................................................................................................ 9

*Chiles v. Thornburgh,*
  865 F.2d 1197 (11th Cir. 1989) .................................................................... 6, 9, 10, 14

*Clark v. Ariz. Interscholastic Assoc.,*
  695 F.2d 1126 (9th Cir. 1982) ................................................................................ 15

*Clark v. Putnam County,*
  168 F.3d 458 (11th Cir. 1999) ............................................................................ 12, 13

*Cuoco v. Moritsugu,*
  222 F.3d 99 (2d Cir. 2000) ..................................................................................... 8

*Davis v. Butts,*
  290 F.3d 1297 (11th Cir. 2002) ............................................................................. 10

*Dillard v. City of Foley,*
  166 F.R.D. 503 (M.D. Ala. 1996) ............................................................................ 3

*Farmer v. Circuit Court of Md. for Baltimore Cty.,*
  31 F.3d 219 (4th Cir. 1994) ..................................................................................... 8

*Farmer v. Haas,*
  990 F.2d 319 (7th Cir. 1993) ................................................................................... 8

*Fed. Sav. and Loan Ins. Corp. v. Falls Chase Special Taxing Dist.,*
  983 F.2d 211 (11th Cir. 1993) ............................................................................ 11, 12

*Forsyth Cty. v. U.S. Army Corps of Engineers,*
  No. 2:08–CV–0126–RWS, 2009 WL 1312511 (N.D. Ga. May 8, 2009) .............................. 6

*FTC v. Johnson,*
  800 F.3d 448 (8th Cir. 2015) ................................................................................. 12

*Fuel Ave., Inc. v. Nat'l Brokers of Am., Inc.,*
  329 F.R.D. 461 (S.D. Fla. 2019) ............................................................................... 6

*Georgia Aquarium, Inc. v. Pritzker,*
  309 F.R.D. 680 (N.D. Ga. 2014) ............................................................................... 6

*Georgia v. United States Army Corps of Eng'rs,*
  302 F.3d 1242 (11th Cir. 2002) ............................................................................... 5

*Glenn v. Brumby,*
  663 F.3d 1312 (11th Cir. 2021) ............................................................................. 15

*Grutter v. Bollinger,*
    188 F.3d 395 (6th Cir. 1999) ..................................................................... 8, 9

*Hardin v. Kentucky Util. Co.,*
    390 U.S. 1 (1968) ............................................................................................ 9

*Hecox v. Little,*
    479 F. Supp. 3d 930 (D. Idaho 2020) ...................................................... 8, 9, 13

*Huff v. Commissioner,*
    743 F.3d 790 (11th Cir. 2014) ....................................................................... 9

*In re Beef Indus. Antitrust Litig.,*
    589 F.2d 786 (5th Cir. 1979) ....................................................................... 16

*In re Selina Soule,*
    No. 20-2180 (2d Cir. Nov. 4, 2020), ECF No. 42 ............................................ 2

*Kosilek v. Spencer,*
    740 F.3d 733 (1st Cir. 2014) .......................................................................... 8

*ManaSota–88, Inc. v. Tidwell,*
    896 F.2d 1318 (11th Cir. 1990) ..................................................................... 6

*Meek v. Metropolitan Dade County,*
    985 F.2d 1471 (11th Cir. 1993) ..................................................................... 3

*Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc.,*
    425 F.3d 1308 (11th Cir. 2005) ..................................................................... 5

*Murray v. U.S. Bureau of Prisons,*
    106 F.3d 401, 1997 WL 34677 (6th Cir. 1997) ............................................. 8

*N.C. State Conf. of NAACP v. Berger,*
    999 F.3d 915 (4th Cir. 2021) (*en banc*) ...................................................... 14

*Piambino v. Bailey,*
    757 F.2d 1112 (11th Cir. 1985) ................................................................... 16

*Pub. Citizen v. Liggett Grp., Inc.,*
    858 F.2d 775 (1st Cir. 1988) ....................................................................... 16

*Qz'etax v. Ortiz,*
    170 F. App'x 551 (10th Cir. 2006) ................................................................. 8

*Resort Timeshare Resales, Inc. v. Stuart,*
    764 F. Supp. 1495 (S.D. Fla. 1991) ........................................................ 7, 10

*Sabri v. United States,*
    541 U.S. 600 (2004)..................................................................................... 10

*Schwenk v. Hartford,*
    204 F.3d 1187 (9th Cir. 2000) ..................................................................... 8

*Sellers v. United States,*
    709 F.2d 1469 (11th Cir. 1983) ................................................................... 14

*Smith v. Rasmussen,*
    249 F.3d 755 (8th Cir. 2001) ....................................................................... 8

*Soule et al. v. Connecticut Assoc. of Schools, Inc.,*
    No. 3:20-cv-0201–RNC (D. Conn. February 12, 2020)................................ 2

*Southwest Center for Biological Diversity v. Berg,*
    268 F.3d 810 (9th Cir. 2001) ....................................................................... 9

*Sterling v. Sellers,*
    817 Fed App'x 895 (11th Cir. 2020) ........................................................... 7

*Stone v. First Union Corp.,*
    371 F.3d 1305 (11th Cir. 2004) ................................................................... 3

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.,*
    308 F.R.D. 39 (D. Mass. 2015), *aff'd* 807 F.3d 472 (1st Cir. 2015).......... 9

*Swinton v. SquareTrade, Inc.,*
    960 F.3d 1001 (8th Cir. 2020) ..................................................................... 12

*United States v. City of Miami,*
    278 F.3d 1174 (11th Cir. 2002) ...............................................................3, 11

*United States v. Salerno,*
    481 U.S. 739 (1987)..................................................................................... 10

*United States v. South Fla. Water Mgmt. Dist.,*
    922 F.2d 704 (11th Cir. 1991) ..................................................................... 5

*United States v. State of Georgia,*
    19 F.3d 1388 (11th Cir. 1994) ..................................................................... 11

*United States v. Yale Univ.,*
    337 F.R.D. 35 (D. Conn. 2021) ................................................................... 11

*Walters v. City of Atlanta,*
    803 F.2d 1135 (11th Cir. 1986) ................................................................... 3

*Washington State Grange v. Washington State Republican Party*,
    552 U.S. 442 (2008)..................................................................................................10, 11

*Yazoo & Mississippi Valley R.R. Co. v. Jackson Vinegar Co.*,
    226 U.S. 217 (1912).................................................................................................... 10

**<u>Other Authorities</u>**

7C *Wright & Miller's Fed. Prac. & Proc. Civ.* § 1909 (3d ed.)...........................................12, 13

Fed. R. Civ. P. 24(a) ..................................................................................................2, 7, 9, 12

Fed. R. Civ. P. 24(b)(1)(B)................................................................................................... 14

Fed. R. Civ. P. 24(c) ........................................................................................................... 16

# INTRODUCTION

Plaintiff is a thirteen-year-old girl who attends a middle school in Broward County, where she plays on the girls' soccer team. Compl. ¶ 1. She has played girls' soccer since age seven and has been on hormone blockers since age eleven, on the recommendation of her endocrinologist. *Id*. ¶¶ 22-23. The case presents an as-applied challenge to a new state statute: plaintiff and her parents seek "declaratory and injunctive relief from this Court to allow her to continue to play girls' sports [during her time as a student in the Broward County School District] and to fully participate with her teammates, without being sidelined and ostracized solely because of her gender identity." *Id*. ¶ 5.

To date, the parties in this case have worked cooperatively, courteously, respectfully, and efficiently while zealously representing their respective clients. Most importantly, they have agreed on a schedule for preparing this case for trial in a manner that will allow a final decision on the merits before plaintiff reaches high school. The parties have also agreed that a protective order is required to protect her identity and her family's confidential and sensitive personal and medical information.

Proposed intervenor Selina Soule is a self-proclaimed "elite" college-age track and field athlete who currently lives in Palm Beach County and attends Florida Atlantic University ("FAU"). Soule Mem. in Support of Proposed Mot. to Intervene at 1, 2 (ECF No. 46). She is not eligible to play sports in Broward County at the middle-school or high-school level. *Id*. So far as the record indicates, she has no competency in soccer or volleyball, she has never played on a team with or against plaintiff, she has never tried out for a team on which plaintiff plays and never will given her age, she has never played girls' soccer or volleyball in Broward County, and she has never even met plaintiff.

As a high-school student in Connecticut, Soule sued the Connecticut authorities to force them to bar two transgender girls from competing against her in running races. *Soule et al. v. Connecticut Assoc. of Schools, Inc.*, No. 3:20-cv-0201–RNC (D. Conn. February 12, 2020). During the course of that lawsuit, Soule: opposed the request of transgender minors to withhold their names from the public docket, ECF No. 64; unsuccessfully moved to recuse the District Judge presiding over the case, ECD No. 103 [1]; and unsuccessfully petitioned for a writ of mandamus to remove the District Judge, *In re Selina Soule*, No. 20-2180 (2d Cir. Nov. 4, 2020), ECF No. 42. Soule's case in Connecticut was dismissed as moot after she graduated from high school, but she is prosecuting an appeal in the Second Circuit.

## ARGUMENT

I.   **SOULE DOES NOT MEET THE REQUIREMENTS FOR INTERVENTION OF RIGHT**

Rule 24(a) provides, in part:

> On timely motion, the court must permit anyone to intervene who:
>
> * * *
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Thus, Soule must demonstrate that: (1) her application to intervene is "timely"; (2) she has "an interest relating to the property or transaction which is the subject of the action"; (3) she is "so situated that disposition of the action, as a practical matter, may impede or impair [her] ability to

---

[1] The recusal motion arose when the District Court admonished Soule's counsel—the same firm proposing to represent her here—to stop calling the transgender intervenors "male." The Court explained that doing so was "needlessly provocative," "inconsistent with norms of civility in judicial proceedings[,]" and contrary to "the science that tells us calling transgender girls 'males' can cause significant mental and emotional distress." *Soule*, Order Den. Mot. for Recusal (D.E. 121) (June 16, 2020).

protect that interest"; and (4) her interest is not adequately represented by the existing parties to the suit. *See Stone v. First Union Corp.*, 371 F.3d 1305, 1308–09 (11th Cir. 2004). The prospective intervenor carries the burden to show that she has met all four requirements. *See United States v. City of Miami*, 278 F.3d 1174, 1178 (11th Cir. 2002).

### A.   Soule's Motion Is Untimely in the Unique Circumstances of this Case

The timeliness analysis falls within the Court's discretion. *See Walters v. City of Atlanta*, 803 F.2d 1135, 1150 n.16 (11th Cir. 1986). The Court should consider not only the chronology leading up to the motion for intervention, but "all the circumstances," including: (1) the length of time during which the would-be intervenor actually knew or reasonably should have known of her interest in the case before petitioning for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as she actually knew or reasonably should have known of her interest in the case; (3) the extent of the prejudice that the would-be intervenor may suffer if her petition for leave to intervene is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely. *Meek v. Metropolitan Dade County*, 985 F.2d 1471, 1478–79 (11th Cir. 1993). The Court has discretion to apply these factors to deem Soule's motion untimely.

1. Soule is silent as to how long she knew about the lawsuit, so the Court may assume that she knew about it upon or shortly after filing. While a three-month delay does not *automatically* render a motion to intervene "untimely," such a delay may be untimely if the tardiness would prejudice the existing parties. *See Dillard v. City of Foley*, 166 F.R.D. 503, 505 (M.D. Ala. 1996).

2.      Adding Soule to the case would prejudice plaintiff by throwing the existing case schedule into doubt. Soule and her counsel have a track record of aggressive and disruptive litigation, including motions to recuse, petitions for mandamus, and even oppositions to motions to protect the privacy of minors. Soule has already begun her disruptive tactics by waiting until *after* plaintiff filed her opposition to the single, consolidated motion to dismiss to move to intervene and attaching a proposed *second* memorandum of law which, if permitted to be filed, would delay the resolution of the motion to dismiss. Soule offers no explanation for what appears to have been a strategic delay in filing this memorandum. In short, Soule's presence will likely lead to disputes that would push the final resolution of this case past the time when plaintiff will enter high school. Such a delay would severely prejudice plaintiff.

3.      As discussed below, Soule herself has no cognizable interest in this as-applied challenge to the statute, so she will suffer no prejudice if her motion is denied.

4.      Soule identifies no unusual circumstance militating in favor of intervention. Militating against intervention are Soule's disturbing history of opposing the privacy of transgender minors and her counsel's overly aggressive tactics which have included responding to a district court's insistence on civility with a motion to recuse and a petition for mandamus. In addition, Soule's presence would expand this case from one focused on a particular girl in a particular school to one with state-wide or, potentially, national

4

implications, increasing the burden on the plaintiff, other defendants, and the Court. The testimony that the intervenor and her experts will offer about college-age athletes will be a time-consuming distraction from the issues this Court will have to decide, which involve a young person about to enter high school, and could extend the length of the trial which already has been scheduled for June 2022. This is not theoretical because the issues she is raising involve different factual and expert concerns such as the availability of college scholarships and the impact of transitioning later in life. Plaintiff is not asking the Court to address these issues and her case should not be delayed merely because the intervenor has concerns related to her own situation.

**B.      Soule Has Not Shown She Has A Legally Cognizable Interest in this Case**

In this Circuit, an intervenor must show their "interest in the subject matter of the litigation is direct, substantial and legally protectable." *Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005) (quoting *Georgia v. United States Army Corps of Eng'rs*, 302 F.3d 1242, 1249 (11th Cir. 2002)). A legally protectable interest is "one which the *substantive* law recognizes as belonging to or being owned by the applicant" derived "from a legal right." *United States v. South Fla. Water Mgmt. Dist.*, 922 F.2d 704, 710 (11th Cir. 1991) (quotation marks and citation omitted). Intervention of right is improper where "the sole basis of its interest is general concern for" the application of a particular rule of law, because such an interest "is shared with all" like-minded citizens. *Athens Lumber Co. v. Fed. Election Comm'n*, 690 F.2d 1364, 1366 (11th Cir. 1982).

Here, Soule does not claim that she will be harmed or in any way affected by this Court's decision allowing or not allowing plaintiff to play soccer and volleyball at the middle-school or high-school level. Rather, Soule asserts that as an athlete at FAU, she wants to "maintain a competitive environment shielded from" unidentified transgender athletes who might in the future potentially compete against her for a spot on the team or for victory in a track meet at some unidentified date in the future. Soule Mem. at 10. Soule identifies no such athletes on her team or on any other Florida-based team against which she might compete. Interests that are contingent on future events and that are "purely a matter of speculation" are not "the kind of legally protectable interest . . . necessary to support intervention as of right." *ManaSota–88, Inc. v. Tidwell*, 896 F.2d 1318, 1322 (11th Cir. 1990); *see Fuel Ave., Inc. v. Nat'l Brokers of Am., Inc.*, 329 F.R.D. 461, 463 (S.D. Fla. 2019); *Forsyth Cty. v. U.S. Army Corps of Engineers*, No. 2:08–CV–0126–RWS, 2009 WL 1312511, at *2 (N.D. Ga. May 8, 2009) (proposed intervenor's "interest in protecting its reputation or speculative economic investment is not direct, substantive, or derived from a legal right.").

Absent a specific interest in the nucleus of operative fact giving rise to *this* case, Soule asserts only a generalized interest in the new Florida statute. That claimed interest is insufficient in this Circuit, where "an intervenor's interest must be a particularized interest rather than a general grievance." *Chiles v. Thornburgh*, 865 F.2d 1197, 1212 (11th Cir. 1989); *see Georgia Aquarium, Inc. v. Pritzker*, 309 F.R.D. 680, 689 (N.D. Ga. 2014) (denying intervention because a "generalized conservation interest in cetaceans" is insufficient); *Brenner v. Scott*, 298 F.R.D. 689, 691 (N.D. Fla. 2014) (denying intervention because a "generalized" interest in the issue of same-sex marriage is insufficient); *Arvida Corp. v. City of Boca Raton*, 59 F.R.D. 316, 321 (S.D. Fla. 1973) (denying intervention because applicant did not "claim an interest in the very property and the very

transaction which is the subject of the lawsuit") (quotation marks omitted). Soule's status as a person who believes that allowing transgender girls to play girls' sports is generally wrong does not support intervention, either:

> An important purpose of Rule 24(a) is to foster economy of judicial administration. This purpose is hardly served by granting lobbyists the full right to intervene. Moreover, such an expanded definition of 'interest' might open the courtroom door to every citizen who has called his congressman concerning legislation, thereby compromising the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches.

*Resort Timeshare Resales, Inc. v. Stuart*, 764 F. Supp. 1495, 1499 (S.D. Fla. 1991) (citations and quotation marks omitted).

Soule attempts to elide Rule 24(a)'s requirement that she have a "particularized interest" by stating that "a woman's right to an equal athletic opportunity is a 'legitimate and important government interest.'" Soule Mem. at 7 (citations omitted). This is faulty reasoning. To support intervention, the interest "must be based on a right which belongs to the proposed intervenor rather than to an existing party to the suit." *Calloway v. Westinghouse Elec. Corp.*, 115 F.R.D. 73, 74 (M.D. Ga. 1987). The relevant Florida state and municipal government actors are already in the case; Soule is not permitted to rely on their interests instead of her own. In *Sterling v. Sellers*, 817 Fed App'x 895 (11th Cir. 2020), the court affirmed denial of an inmate's application to intervene in a lawsuit concerning religious liberty at a Georgia prison, because the proposed intervenor was in a different facility from the plaintiff, explaining that the intervenor "cannot rewrite the nature of the underlying lawsuit to construct a particularized interest in the transaction that he does not otherwise have." *Id.* at 898.

The intervention motion itself proves how different Soule's position is from that of the plaintiff here. Soule repeatedly asserts her "equal opportunity to compete in collegiate athletics,"

Soule Mem. at 9, and the economic benefits college athletes get if "they are compensated for their name, image or likeness[.]" *Id.* Plaintiff here is a middle school student whose involvement in school sports could not possibly have any impact on whether Soule gets a college scholarship or is compensated for her involvement in collegiate athletics. Soule also points out that in her own case seeking an injunction barring transgender girls from competing against her,[2] the targets of her proposed injunction were permitted to intervene. But in that case, the proposed intervenors obviously had a direct stake in the outcome of the litigation, since Soule wanted the court to *bar them personally from competing against her.*

Finally, Soule cites cases from other circuits, including *Hecox v. Little*, 479 F. Supp. 3d 930 (D. Idaho 2020), and *Grutter v. Bollinger*, 188 F.3d 395 (6th Cir. 1999). Those cases are

---

[2] Soule calls these individuals "male athletes," ECF No. 46 at 8, contrary to the longstanding practice of the federal courts to use transgender litigants' current pronouns out of respect for their dignity. *See, e.g.*, *Bostock v. Clayton County*, 140 S. Ct. 1731, 1738 (2020) ("When she got the job, Ms. Stephens presented as a male. But two years into her service with the company, she began treatment for despair and loneliness."); *Adams v. Sch. Bd. of St. Johns Cty.*, 3 F.4th 1299, 1304 (11th Cir.) ("Mr. Adams is transgender, meaning when he was born, doctors assessed his sex and wrote "female" on his birth certificate"), *reh'g en banc granted*, 9 F.4th 1369 (11th Cir. 2021); *Kosilek v. Spencer*, 740 F.3d 733, 737 n.3 (1st Cir. 2014) ("We will refer to Kosilek as her preferred gender of female, using feminine pronouns."); *Qz'etax v. Ortiz*, 170 F. App'x 551, 553 (10th Cir. 2006) ("[W]e have no objection to Appellant's motion for the continued usage of proper female pronouns and will continue to use them when referring to her."); *Smith v. Rasmussen*, 249 F.3d 755, 756 n.2 (8th Cir. 2001) ("As did the parties during the proceedings in the district court, we will refer to Smith, in accordance with his preference, by using masculine pronouns."); *Cuoco v. Moritsugu*, 222 F.3d 99, 103, 103 n.1 (2d Cir. 2000) ("We ... refer to the plaintiff using female pronouns" because "[s]he [is] a preoperative male to female transsexual."); *Schwenk v. Hartford*, 204 F.3d 1187, 1192 n.1 (9th Cir. 2000) ("In using the feminine rather than the masculine designation when referring to Schwenk, we follow the convention of other judicial decisions involving male-to-female transsexuals which refer to the transsexual individual by the female pronoun."); *Murray v. U.S. Bureau of Prisons*, 106 F.3d 401, 1997 WL 34677, at *1 n.1 (6th Cir. 1997) ("Murray uses the feminine pronoun to refer to herself. Although the government in its brief used the masculine pronoun, for purposes of this opinion we will follow Murray's usage."); *Farmer v. Circuit Court of Md. for Baltimore Cty.*, 31 F.3d 219, 220 n.1 (4th Cir. 1994) ("This opinion, in accord with Farmer's preference, will use feminine pronouns."); *Farmer v. Haas*, 990 F.2d 319, 320 (7th Cir. 1993) ("[T]he defendants say 'he,' but Farmer prefers the female pronoun and we shall respect her preference.").

different on the facts and the law. The intervenors in *Hecox* were playing at the very same level and in the very same sports as the plaintiffs. 479 F. Supp. 3d at 946-47. Unlike here, the intervenors and the plaintiff Hecox were college students and therefore might someday be playing against each other or trying out for the same team. In *Grutter* the intervenors were applying for admission to the exact university whose admissions policies were at issue. 188 F.3d at 396-97. Those cases were decided under the law of Circuits with far more liberal standards than the one applicable here: both Circuits specifically "reject the notion that Rule 24(a)(2) requires a specific legal or equitable interest," *Grutter*, 188 F.3d at 398; *see Hecox*, 479 F. Supp. 3d at 951 (quoting *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001); *compare Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 308 F.R.D. 39, 49 (D. Mass. 2015) (declining to follow *Grutter* in light of the "more restrictive test employed by some other circuits, which rejects interests that are 'speculative, indirect, or contingent'"), *aff'd* 807 F.3d 472 (1st Cir. 2015). Soule also cites *Hardin v. Kentucky Util. Co.*, 390 U.S. 1, 5-6 (1968), but that case did not concern intervention at all. It was about the circumstances in which a statute supported standing arising out of "competitive injury." *Id.* at 6. Since Soule does not allege that she has or ever will suffer "competitive injury" from any conduct of D.N., *Hardin* is doubly inapposite.

**C.    Soule Has Not Shown that Resolution of This Action Will Impair Her Rights**

The third element of Rule 24(a) requires Soule to show that she "'would be substantively affected in a practical sense by the determination made in an action.'" *Huff v. Commissioner*, 743 F.3d 790, 800 (11th Cir. 2014) (quoting *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 134 n.3 (1967)). This element is "closely related" to the nature of the interest alleged. *Chiles,* 865 F.2d at 1214. "Where a party seeking to intervene . . . claims an interest in the very property and very transaction that is the subject of the main action, the potential *stare decisis* effect

may supply that practical disadvantage which warrants intervention as of right." *Id.* In contrast, an intervenor's rights are unimpaired where the resolution of the lawsuit will leave them "free to seek any applicable legal remedies." *Davis v. Butts*, 290 F.3d 1297, 1300 (11th Cir. 2002).

Soule obviously has no interest in the transaction at issue. She argues that her rights could be impaired because D. "is seeking facial relief." Mem. 12. But plaintiff is not making a facial challenge to the statute, as she pointed out in her response to defendants' motion to dismiss. ECF No. 44 at 10-12. She is making an as-applied challenge. *See id.* Soule argues that she needs to intervene just in case some unexpected turn in the litigation might "imperil" her interest in equal opportunity, in case the Court *sua sponte* issues a state-wide injunction or as a matter of *stare decisis*. She cites no case identifying impairment based on a potential "turn in the litigation," and "[t]he persuasive force of a district court opinion, however, 'is not reason enough to complicate litigation by adding as parties all who might be concerned about the court's choice of words.'" *Resort Timeshare Resales*, 764 F. Supp. at 1500 (quoting *Bethune Plaza, Inc. v. Lumpkin*, 863 F.2d 525, 532 (7th Cir. 1988)).

Plaintiff has chosen not to mount a facial constitutional challenge because the general rule in litigation is that a "court must deal with the case in hand, and not with imaginary ones." *Yazoo & Mississippi Valley R.R. Co. v. Jackson Vinegar Co.*, 226 U.S. 217, 219 (1912). Facial challenges are "the most difficult ... to mount successfully," as they require the challenger to "establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). The Supreme Court has explained why facial challenges are disfavored. First, "[c]laims of facial invalidity often rest on speculation. As a consequence, they raise the risk of 'premature interpretation of statutes on the basis of factually barebones records.'" *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008) (quoting *Sabri v.*

*United States*, 541 U.S. 600, 609 (2004)). Second, such challenges "also run contrary to the fundamental principle of judicial restraint that courts should neither 'anticipate a question of constitutional law in advance of the necessity of deciding it,' nor 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.'" *Id.* (quoting *Ashwander v. TVA*, 297 U.S. 288, 346–47 (1936) (Brandeis, J., concurring)) (internal quotation marks omitted). The Eleventh Circuit has held that it is the scope of the relief requested that determines whether a challenge is facial or as applied. *See Am. Fed'n of State, Cnty. & Mun. Emps. Council 79 v. Scott*, 717 F.3d 851, 863 (11th Cir. 2013). Although it may suit the proposed intervenor's purposes to portray this as a broad facial challenge that might impact a college student like her, no such broad relief is requested here.

Soule claims to worry that this Court might throw restraint aside and issue a facial injunction *sua sponte*, but that possibility seems unlikely: "under our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws." *Broadrick v. Oklahoma*, 413 U.S. 601, 610–11 (1973) (citation omitted). This Court can rule on plaintiff's as-applied challenge, consistent with the above principles, without granting the intervention request. Soule's suggestion that she should be allowed to intervene as a "watchdog" in case the Court goes beyond what is actually being requested here should be rejected.

**D.    Soule Has Not Shown That the Existing Parties Are Inadequate**

Intervention is presumed to be improper "when applicants for intervention seek to achieve the same objectives as an existing party in the case." *U.S. v. City of Miami*, 278 F.3d 1174, 1178 (11th Cir. 2002) (internal citation and quotation marks omitted); *accord U.S. v. State of Georgia*, 19 F.3d 1388, 1394 (11th Cir. 1994); *Fed. Sav. and Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 215 (11th Cir. 1993); *see United States v. Yale Univ.*, 337 F.R.D. 35, 42 (D.

11

Conn. 2021) (denying intervention after finding no "material difference between these two prayers for relief"). Here, Soule's proffered motion to dismiss asks this Court "to dismiss D.N.'s complaint." ECF No. 46-2 at 20. Similarly, the existing defendants' pending motion to dismiss asks the Court "to dismiss D.N.'s complaint." ECF No. 33 at 27.

A party can come forward with evidence to overcome the presumption by showing that (1) collusion exists between the existing parties, (2) the existing party has an interest adverse to the proposed intervenor, or (3) the existing party has failed in the fulfillment of its duty. *Clark v. Putnam County*, 168 F.3d 458, 462 (11th Cir. 1999); *Fed. Sav. and Loan Ins. Corp.*, 983 F.2d at 215. When the existing party is a government entity, the court requires "'the party seeking to intervene to make a strong showing of inadequate representation.'" *Burke v. Ocwen Fin. Corp.*, 833 F. App'x 288, 293 (11th Cir. 2020) (quoting *FTC v. Johnson*, 800 F.3d 448, 452 (8th Cir. 2015)); *accord* 7C *Wright & Miller's Fed. Prac. & Proc. Civ.* § 1909 (3d ed.) (courts require "a very compelling showing" that state and local governments are inadequate to represent the interests of their citizens).

Soule does not make *any* factual showing of inadequacy. She does not assert collusion. She does not assert adversity between herself and defendants. She does not assert that the defendants have failed to fulfill a duty. Soule merely contends that she will offer "different arguments and strategies in this litigation." ECF No. 46 at 16. But that is insufficient under Rule 24(a): "a tactical difference does not make inadequate the representation of those whose interests are identical with that of an existing party," nor do "differences in litigation strategy." *Bake House SB, LLC. v. City of Miami Beach*, No. 17-20217-CV-LENARD/GOODMAN, 2017 WL 2645760, at *5 (S.D. Fla. June 20, 2017) (citation omitted); *accord Swinton v. SquareTrade, Inc.*, 960 F.3d 1001, 1005 (8th Cir. 2020) ("A difference of opinion concerning litigation strategy or individual aspects of a

remedy does not overcome the presumption of adequate representation."); 7C *Wright & Miller's Fed. Prac. & Proc. Civ.* § 1909 & n.36 (3d ed.) (collecting cases for the proposition that "[a] mere difference of opinion concerning the tactics with which the litigation should be handled does not make inadequate the representation of those whose interests are identical with that of an existing party").

Defendants here are vigorously defending the law and have filed a lengthy motion to dismiss on both procedural and substantive grounds. Unlike in *Hecox*, 479 F. Supp. 3d at 955, where the court granted intervention, in part, because the governmental actors were presenting a limiting construction of the law, no such position or compromise is being presented by defendants in this case. In fact, a review of the proposed motion to dismiss submitted with Soule's intervention motion shows that she is basically adopting defendants' arguments and seeking to have the case against plaintiff dismissed outright at the pleading stage.

Soule relies on *Clark v. Putnam County* (ECF No. 46 at 15–16) but the case is uninstructive, because that case specifically involved adversity between the defendant and the proposed intervenor. *See* 168 F.2d at 461–62. The case arose when white voters challenged the constitutionality of a court-ordered voting plan that had been adopted to address systemic historical racial discrimination against black voters. *Id.* at 461. The named defendants themselves admitted that they could not take both sides of the dispute—and indeed the court explained that "it is normal practice in reapportionment controversies to allow intervention of voters . . . supporting a position that could theoretically be adequately represented by public officials." *Id.* at 461 & n.3. Here, in contrast, defendants have all appeared and moved to dismiss for failure to state a claim and on ripeness grounds. They are aligned with Soule.

## II.  THE COURT SHOULD DENY SOULE'S MOTION FOR PERMISSIVE INTERVENTION

Rule 24(b)(1)(B) provides, in part:

> On timely motion, the court may permit anyone to intervene who:
>
> * * *
>
> (B) has a claim or defense that shares with the main action a common question of law or fact.

It is within this Court's discretion to deny permissive intervention "in light of the remoteness and the general nature" of a proposed intervenor's claim (*Athens Lumber*, 690 F.2d at 1367), if the intervention threatens "undue delay" (*Chiles*, 865 F.3d at 1215), or if "the intervention proposed would have expanded [the] litigation." *Sellers v. United States*, 709 F.2d 1469, 1471–72 (11th Cir. 1983). "[M]aterial factual differences" between the facts in issue and those proposed to be injected also "counsel against intervention." *Adana Investing, Inc. v. Forrest Cap. Partners, Inc.*, No. 15-24038-Civ-COOKE/TORRES, 2016 WL 7438832, at *3 (S.D. Fla. Jul. 12, 2016).

The court can deny permissive intervention where, as here, the presence of a proposed intervenor might require the plaintiff "to address dueling defendants with multiple litigation strategies," *N.C. State Conf. of NAACP v. Berger*, 999 F.3d 915, 939 (4th Cir. 2021) (*en banc*) (citation and internal quotation marks omitted). Permissive intervention is not warranted where there is a legitimate concern that the prospective party's "litigation conduct"—such as "seeking the extraordinary remedy of mandamus"—will result in "unnecessary complications and delay." *Id*.

The decision of Judge Hinkle in *Brenner v. Scott* is instructive. There, the court denied permissive intervention in a case where a proposed intervenor sought to oppose same-sex marriage, explaining:

> Factors that support this conclusion include the meager if not nonexistent benefit that would flow from allowing FFA to intervene as opposed to just allowing FFA to participate as an amicus, the unnecessary procedural complexity that intervention would entail, and the likelihood that allowing FFA to intervene would bring forth other proposed intervenors who would assert only generalized political interests and whose participation probably would generate more heat than light.

298 F.R.D. at 691–92.

Soule contends that she should be allowed to intervene because defendants are not specifically arguing that separate sports teams for boys and girls are required. As an initial matter, Soule is mistaken, as defendants cite *Clark v. Ariz. Interscholastic Assoc.*, 695 F.2d 1126 (9th Cir. 1982) in their Motion to Dismiss for this very proposition. ECF No. 33 at 13-14. Furthermore, plaintiff is not challenging the fact that there are separate teams for girls and boys, so Soule's involvement is entirely unnecessary. Soule also argues that she should be allowed to intervene to argue that discrimination against transgender individuals does not constitute sex discrimination and therefore is not subject to heightened scrutiny, but this argument does not give Soule an interest in the case that is different than any other lawyer, organization or member of the public who disagrees with the controlling Eleventh Circuit and Supreme Court precedent on this issue. As defendants appropriately recognize in their Motion to Dismiss, the Eleventh Circuit has ruled on the equal protection standard. *Id.* at 17, fn. 7 (citing *Glenn v. Brumby*, 663 F.3d 1312, 1315-20 (11th Cir. 2021)). Defendants' representation is not inadequate because they understand the import of controlling precedent.

The fact that Soule, in some other state, played against a transgender athlete does not—as she argues—give her any "special expertise" to support her intervention motion. *See* ECF No. 46 at 17. She is not an expert and has no formal training in any of the medical or scientific disciplines that this Court ultimately will have to consider at trial. She is not in any different position than any

other college-age athlete who has an opinion about the law, pro or con. Allowing her to intervene would open the floodgates to similar applications from individuals in college, all of whom are older than plaintiff, merely because they want to share their personal views about the issues before this Court.

## III.    SOULE'S MOTION IS PROCEDURALLY DEFECTIVE

A motion to intervene "must…be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). Litigants should not attempt to circumvent the clear requirements of this rule. *In re Beef Indus. Antitrust Litig.*, 589 F.2d 786, 789 (5th Cir. 1979). "The language of the rule is mandatory, not permissive, and the rule sets forth reasonable procedural requirements to insure that claims for intervention are handled in an orderly fashion." *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 783–84 (1st Cir. 1988).

Soule filed an untimely motion to dismiss, but a motion to dismiss—particularly one that is not filed on time—is not a pleading. The court has discretion to excuse noncompliance if the noncompliance "could not possibly have prejudiced" any of the parties." *Piambino v. Bailey*, 757 F.2d 1112, 1121 (11th Cir. 1985). Here, however, Soule offers no reason for her failure to comply with Rule 24(c). Soule's attempt to brief the merits of her position before intervention is granted should be rejected by this Court. In the event the Court decides to consider the merits of intervenor's motion to dismiss, plaintiff respectfully requests an opportunity to respond to that motion. By not responding now, plaintiff does not waive any procedural objection to the unorthodox practice employed by the proposed intervenor.

## CONCLUSION

Soule's motion to intervene should be rejected because she has neither established any basis to intervene as of right nor shown that permissive intervention is warranted. Her presence in this litigation is not necessary, and would involve the Court and all the parties in issues that are beyond the scope of this as-applied challenge involving a teenage girl. Plaintiff therefore respectfully requests that Soule's motion be denied in its entirety.

////

DATED: October 4, 2021

Respectfully submitted,

*/s/ Jason A. Ross*

Jason A. Ross
Fla. Bar No. 59466
Jason.Ross@arnoldporter.com
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue NW
Washington, D.C. 20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999

Rosalyn Richter *
Arnold & Porter Kaye Scholer LLP
250 W. 55th St.
New York, N.Y. 10019
Telephone: (212) 836-8000
Facsimile: (212) 836-9689
Rosalyn.Richter@arnoldporter.com

Kent A. Yalowitz *
Arnold & Porter Kaye Scholer LLP
250 W. 55th St.
New York, N.Y. 10019
Telephone: (212) 836-8000
Facsimile: (212) 836-9689
Kent.Yalowitz@arnoldporter.com

Jason Starr *
Human Rights Campaign Fund
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762
Facsimile: (202) 628-0517
Jason.Starr@hrc.org

Sarah Warbelow *
Human Rights Campaign Fund
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 572-8981
Facsimile: (202) 628-0517
Sarah.Warbelow@hrc.org

* Admitted *pro hac vice*

*Counsel for D.N., by her next friends,*
*Jessica N., mother, and Gary N., father*

18