**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-61344-CIV-ALTMAN/Hunt**

D.N., by her next friends, JESSICA N.,
mother, and GARY N., father,

    Plaintiff,

v.

GOVERNOR RONALD DESANTIS,
in his official capacity as Governor of
Florida; *et al.*,

    Defendants.

_____/

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

**INTRODUCTION**

The defendants' motion to dismiss demonstrated that sex-separated athletic teams are not only lawful, but also long-accepted safeguards of the opportunity of girls and women to participate in interscholastic athletics. While the response argues D.N.'s personal circumstances at length, it offers little substance or legal argument to establish the viability of her legally insufficient claims.

D.N. fails to support her contention that Title IX—which Congress enacted to secure girls and women from discrimination in education—entitles a biological male to compete athletically against biological females. Remarkably, D.N. does not stop to examine Title IX's text and simply ignores the Title IX regulation that *expressly permits* sex-separated athletic teams. D.N. does not, therefore, identify a Title IX theory rooted in the statute and regulations. Nor does D.N. deny that biological males and females are differently situated with respect to athletics. Instead, D.N. relies on *Bostock*, but offers virtually no rebuttal of the defendants' analysis of *Bostock*'s inapplicability.

D.N.'s equal-protection claim stands on no firmer footing. D.N. argues that the challenged law is invalid as applied because *its application to her* does not advance any governmental interest. But equal protection does not require a challenged law's application to each individual person to separately advance the law's legitimate interests. If it did, then a State could never rely on generally applicable classifications—for example, an age limitation on voting or driving—but instead would be compelled to perform individualized assessments in particular cases. That is not the law. In any event, the statute's application to D.N. does advance its purposes because D.N.'s participation on the girls team would displace a biological female. Finally, the challenged law's reliance on a birth certificate filed around the time of birth does not plausibly show that the Florida Legislature acted with discriminatory animus, rather than to exclude *all* biological males from female competition.

The Court should accordingly dismiss D.N.'s complaint with prejudice.[1]

**ARGUMENT**

**I.    D.N.'S TITLE IX CLAIM SHOULD BE DISMISSED.**

D.N.'s Title IX argument is perhaps most notable for what it does *not* say. D.N. provides no analysis of the statutory text and no response to the defendants' textual arguments. D.N. wholly ignores the Title IX regulation that *expressly permits* Florida to do what the challenged law does: maintain sex-separated athletic teams. D.N. fails, therefore, to explain how a state statute that Title

---

[1] The FHSAA joins only in Part IV of this reply.

IX authorizes in fact violates Title IX. And D.N. does not explain how her position—which would entitle some biological males to compete with females—comports with Title IX's purpose to afford biological females, who were long under-represented in sports, an equal opportunity to participate.

D.N. pins her hopes on *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), a Title VII case, but provides scant analysis and ignores the obvious differences. D.N. does not deny that *Bostock* concerns the differential treatment of individuals on the basis of transgender status. Yet the law challenged here assigns D.N. to the same athletic team *no matter* her transgender status—quite unlike *Bostock*, where an employee was terminated because she was transgender. *Id*. at 1738. Likewise, D.N. does not deny the central importance of *Bostock*'s finding that sex is altogether irrelevant to employment decisions, *id*. at 1741, while the law challenged here reflects the long-standing recognition that sex *is* relevant and even integral to decisions about athletic participation.

Instead, D.N.'s entire *Bostock* argument consists of the single proposition in *Bostock* that "it is impossible to discriminate against a person for being . . . transgender without discriminating against that individual based on sex." ECF No. 44 at 13 (quoting *Bostock*, 140 S. Ct. at 1741). But the challenged law does not discriminate against D.N. for being transgender. Rather, it codifies an enduring, permissible sex-based classification. In fact, D.N. asserts the *inverse* of the proposition stated above. The question here is not whether discrimination on the basis of transgender status is sex-based discrimination, but whether an otherwise permissible sex-based classification becomes impermissible because of its impact on transgender individuals. That is not what *Bostock* decided.

Whether discrimination on the basis of transgender status is sex-based discrimination was a crucial question in *Bostock* because, while Title VII prohibits discrimination on the basis of sex, it makes no express mention of discrimination on the basis of transgender status. If the sex-based classification is permissible, therefore (which it is here), then its impact on transgender students is insufficient to invalidate it because, like Title VII, Title IX prohibits only sex-based discrimination.

The logical consequence of D.N.'s inverted reading of *Bostock* is that *all* permissible sex-based classifications—for example, in student housing, bathrooms, physical education, and locker rooms—constitute discrimination "against a person for being . . . transgender," *Bostock*, 140 S. Ct. at 1741, and must be converted to gender-identity classifications that entitle transgender persons to be treated for all purposes as members of the sex with which they identify. *Bostock* did not hold (as D.N. argues) that permissible sex-based classifications constitute impermissible discrimination against transgender individuals, but rather that discrimination on the basis of transgender status is

2

sex-based discrimination. *Bostock* does not therefore support D.N.'s assertion that Title IX entitles her, as a biological male who identifies and presents as female, to be treated as a biological female.²

The Eleventh Circuit once suggested otherwise, but that opinion has since been vacated. In *Adams v. School Board of St. Johns County*, 968 F.3d 1286 (11th Cir. 2020), the court determined that a school district's policy of sex-separated bathrooms for public-school students violated equal protection and Title IX. The court held that Title IX required the school district to treat transgender students consistent with their gender identities, rather than biological characteristics. *Id*. at 1306. Chief Judge Pryor dissented, finding Title IX unambiguous and the question not close. *Id*. at 1320.

On the day the opinion was issued, an active member of the court withheld issuance of the mandate. *Adams v. Sch. Bd. of St. Johns Cnty.*, 3 F.4th 1299, 1303 (11th Cir. 2021). One year later, the panel vacated its opinion and issued a far narrower opinion in "an effort to get broader support among our colleagues." *Id*. The new opinion did not address Title IX but continued to hold, albeit on narrower grounds, that the bathroom policy violated equal protection. *Id*. In dissent, Chief Judge Pryor again concluded that the policy complied with equal protection and Title IX. *Id*. at 1320–39.

Despite the narrowed scope of the panel's second opinion, the court voted to hear the case en banc and vacated the revised opinion. *Adams v. Sch. Bd. of St. Johns Cnty.*, 9 F.4th 1369, 1372 (11th Cir. 2021). The court has since established an en-banc briefing schedule and scheduled oral argument for February 21, 2022. *Adams v. Sch. Bd. of St. Johns Cnty.*, No. 18-13592 (11th Cir. Sept. 16, 2021). The panel's attempt to narrow the grounds of its opinion, including its removal of any Title IX analysis from its revised opinion, and the full court's subsequent vacatur of the revised opinion, bode poorly for D.N.'s contention that a difference in treatment between biological males who identify as female and biological females violates Title IX's ban on sex-based discrimination.

D.N. finds the defendants' argument that the challenged law is neutral as to gender identity "hard to understand," ECF No. 44 at 14, but the argument is simple and straightforward. The law does not take gender identity into account. It assigns students to athletic teams on the basis of sex.

D.N. claims that the statute's reliance on a birth certificate filed at or near the time of birth reveals the statute's real intent to target transgender girls. ECF No. 44 at 14. It does no such thing: it relies on a birth certificate filed around the time of birth precisely because it does *not* take gender

---

² D.N. misleadingly asserts that the defendants rely on the dissents in *Bostock*. ECF No. 44 at 13. The defendants cited those dissents *once*—and only for the proposition that all nine Justices either decided or assumed that "sex" in Title VII refers to biological attributes. ECF No. 33 at 19.

3

identity into account. An original birth certificate is compelling evidence of the only criterion that is relevant to the challenged law—sex—while it says nothing about the student's gender identity. Indeed, D.N. identifies no other documentation that more reliably indicates a student's sex than an original birth certificate. The statute's reliance on a document that discloses the student's sex, but does not reveal the student's gender identity, does not suggest that the State intended "to exclude [D.N.], as a transgender girl, from participating on girls sports teams," ECF No. 44 at 14, but rather that the State intended to exclude her, *as a biological male*, from participating on girls sports teams.

In this respect, D.N.'s claims differ sharply from discrimination claims ordinarily brought under federal civil-rights statutes. Under those laws, plaintiffs ordinarily allege that some protected characteristic (such as race, age, or sex) was considered, but should not have been. In *Bostock*, for example, the plaintiffs argued that their employers unlawfully considered their sex and grounded their employment decisions on that characteristic. D.N., by contrast, asserts that her rights will be violated if the defendants do *not* consider her gender identity. D.N. offers no persuasive authority to suggest that the defendants must affirmatively rely upon gender identity in assigning students to athletic teams, especially where, as here, the participation of biological males in female athletics would inevitably displace biological females and deny females an equal opportunity to participate.

Finally, the cases that D.N. cites add little to her argument. In *Grimm v. Gloucester County School Board*, 972 F.3d 586, 618–19 (4th Cir. 2020), the court held that a policy of sex-separated bathrooms in public schools violates Title IX. But to support that conclusion, *Grimm* relied solely on *Adams I*, which (as well as Adams *II*) the Eleventh Circuit has since vacated. *Grimm* therefore has no weight, particularly in this circuit. *Glenn v. Brumby*, 663 F.3d 1312 (11th Cir. 2011), is cut from the same cloth as *Bostock* and is inapposite for the same reasons as *Bostock*. ECF No. 33 at 20–22. *Hecox v. Little*, 479 F. Supp. 3d 930 (D. Idaho 2020), did not decide the Title IX issue at all, while *B.P.J. v. West Virginia State Board of Education*, No. 2:21-cv-00316, 2021 WL 3081883 (S.D. W. Va. 2021), is a preliminary-injunction order entered in the Fourth Circuit, where *Grimm* is binding, and contains so little analysis that it does not even mention the Title IX regulation that authorizes sex-separated athletic teams. None of these cases salvages D.N.'s claim from dismissal.

Congress enacted Title IX to assure that girls and women enjoy the same opportunities in education—including interscholastic athletics—as boys and men. Its use of the word "sex" makes clear that Congress intended to prohibit discrimination on the basis of a biological distinction. 20 U.S.C. § 1681(a). Sex-separated athletic teams assure that males do not dominate interscholastic

4

athletics to the exclusion of female athletes. In doing so, they prevent discrimination, secure a right to participate, and extend the benefits of interscholastic athletics to girls and women in accordance with the biological distinction that Congress made. Because D.N.'s complaint cannot, as a matter of law, plausibly allege that Title IX entitles a biological male to compete with biological females in female athletic competition, this Court should dismiss Count I of the complaint with prejudice.

## II.  D.N.'S EQUAL PROTECTION CLAIM SHOULD BE DISMISSED.

D.N.'s equal-protection claim is legally insufficient. D.N. insists that her equal-protection claim is founded on her own unique circumstances and seeks relief limited to herself. *See* ECF No. 44 at 7–8, 15–18. According to D.N., the challenged law's application to her is unconstitutional because its application to her does not advance the governmental objectives that justify the statute generally. D.N. maintains that the Court must consider evidence of *her* transition and *her* "specific situation," *id*. at 8, 18, and decide whether the statute's application to *her* in her own individualized circumstances substantially relates to the State's legitimate governmental objectives, *id*. at 10–11.

D.N. misunderstands the equal-protection inquiry. As explained below, a broad legislative classification is not unconstitutional as applied to an individual case merely because, in that case, it does not advance the State's interests, or produces inequitable results. The controlling question is whether the classification advances the State's legitimate governmental objectives—not whether its application *in an individual case* advances that interest. If the legislative classification furthers the State's interests, then its application even where that interest is not advanced is constitutional.

Because D.N. misunderstands the equal-protection inquiry, she offers little or no response to the defendants' contentions that biological males *as a class* have physiological advantages that would enable them to displace female athletes and that, when it comes to athletics, biological males are not similarly situated with biological females. Similarly, D.N. offers only the most conclusory response to the defendants' contention that the challenged law substantially relates to the State's legitimate objectives to provide equal athletic opportunities for females and to redress past under-representation of females in athletic competition. Rather, D.N.'s argument hinges on her ability to prove that application of the challenged law to her circumstances serves no purpose. But that alone does not establish an equal-protection violation—and D.N.'s claim should therefore be dismissed.

To illustrate, citizens under the age of eighteen may not vote. Art. VI, § 2, Fla. Const. This limitation excludes individuals who, as a class, lack sufficient judgment and knowledge to exercise the franchise. If D.N. were to establish that, at thirteen, *she* has sufficient judgment and knowledge

5

to vote—and that *her* exclusion from the franchise serves no legitimate objective—then her equal-protection challenge to the age limitation would still be rejected. Or if D.N. were to prove that she could safely drive a car or own a firearm—and that the State's refusal to issue her a driver license or a concealed-carry license serves no legitimate objective—then an equal-protection claim would still fail. Florida may rely on classifications that are well-founded in the main, and need not conduct case-by-case assessments of the constitutional fitness of those classifications in individual cases.

Thus, in *Califano v. Jobst*, 434 U.S. 47 (1977), the plaintiff, who was disabled, challenged a provision of the Social Security Act that required the termination of his benefits upon marriage unless his spouse was also entitled to benefits. The provision assumed that a married person whose spouse was not a recipient was less likely to be financially needy. *Id*. at 53. Because the plaintiff's wife was disabled, though not entitled to benefits, the plaintiff argued that the provision's rationale was inapplicable to him. The Court concluded, however, that the "broad legislative classification must be judged by reference to characteristics typical of the affected classes rather than by focusing on selected, atypical examples," and upheld the statute's application to the plaintiff. *Id*. at 55–56.

Similarly, in *Lalli v. Lalli*, 439 U.S. 259 (1978), the Court upheld a state law that denied all non-marital children the right to inherit from their fathers by intestate succession unless, during their fathers' lifetimes, they secured an order of filiation to establish paternity. *Id*. at 272 (plurality opinion). The statute was intended to promote the orderly disposition of property. *Id*. at 268. The Court recognized that some non-marital children who had not secured orders of filiation would be able to prove paternity consistent with the orderly disposition of property and that, as applied to them, the law appeared "to operate unfairly." *Id*. at 272–73. In upholding the law, the Court noted that "inequitable results" were inherent in most classifications and that the equal-protection inquiry turned on the law's "relation to the state interests it is intended to promote"—not its "fairness." *Id*.

The Eleventh Circuit reached the same conclusion in a recent en-banc decision. In *Jones v. Governor of Florida*, 950 F.3d 795 (11th Cir. 2020), a three-judge panel affirmed the invalidation of a state law that required felons to pay all fines before their right to vote could be restored. The panel recognized that the State had an interest in the collection of revenues, but concluded that the statute's application to the individual plaintiffs—who were indigent and unable to pay their fines— did not serve the State's interest. *Id*. at 811. Later, the en-banc court rejected the panel's reasoning, concluding that the statute applied to the plaintiffs even if its application to them did not advance the State's interest. *Jones v. Governor of Fla.*, 975 F.3d 1016, 1036–37 (11th Cir. 2020) (en banc).

6

Perhaps the most fitting example is *O'Connor v. Board of Education of School District 23*, 449 U.S. 1301 (1980) (Stevens, J., in chambers), in which Justice Stevens declined to vacate a stay of a preliminary injunction that ordered a school district to permit a female athlete to try out for the boys team. Justice Stevens recognized that the requirement of sex-separated athletic teams was "arbitrary" as applied to the plaintiff, but concluded that its validity depended on its operation "in most of its normal applications"—not "in an individual case." *Id.* at 1306–07 & n.4. The Seventh Circuit agreed, *O'Connor v. Bd. of Educ. of Sch. Dist. No. 23*, 645 F.2d 578, 581 (7th Cir. 1981), and the district court on remand denied relief because the plaintiff sought to prove only "that the generalization does not apply to her." *O'Connor v. Bd. of Educ. of Sch. Dist. 23*, 545 F. Supp. 376, 381 (N.D. Ill. 1982); *see also Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 316 (1976) (upholding a mandatory retirement age for police because the retirement age advances a legitimate interest, even though the State elected "not to determine fitness more precisely through individualized testing").

Thus, if D.N. could establish that the challenged law's application to her advances no state interest, that evidence would not entitle D.N. to relief. D.N.'s claim assumes—erroneously—that a State's justification for a general classification must apply to each individual case. Because her claim is founded on a flawed legal position, D.N. cannot prevail, and Count II should be dismissed.

It would make no difference, moreover, if D.N. could show that her athletic abilities are comparable to those of most biological females of the same age, and that she enjoys no competitive advantage by virtue of her sex; the statute's application to D.N. would still advance a legitimate governmental objective. By its terms, the statute is designed to assure biological females an equal opportunity to participate in athletics. D.N. is a biological male. Her participation on the girls team would displace a biological female, contrary to the statute's objective to assure biological females have equal opportunities. And while D.N. asserts that she "is a female" and that her participation on the girls team furthers the statute's objectives, ECF No. 44 at 16, the statute protects biological females—not biological males who might identify as female—and D.N. is not a biological female.

Even apart from D.N.'s framing of her claim, however, the Court should dismiss the equal-protection claim. In determining whether a plaintiff has alleged a plausible claim for relief, a court may "draw on its judicial experience and common sense." *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1094 (11th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Courts have long acknowledged the physical differences between biological males and biological females and the relevance of those differences to athletic competition. ECF No. 33 at 14, 23–25 & n.2. In

light of those differences—which D.N.'s complaint does not plausibly deny—biological males and females are not similarly situated relative to athletics, and the challenged law, by safeguarding the opportunities of girls and women to participate in athletics, is substantially related to a legitimate governmental objective. The complaint does not therefore state a plausible equal-protection claim.

D.N. emphasizes the hardships that the challenged law might cause her, claiming that her participation on the boys team is not an option and that the law will deny her any opportunity to participate in interscholastic sports. ECF No. 44 at 16–17. Of course, because the law is neutral as to gender identity, it does not prevent D.N.'s participation on the boys team. Regardless, the equal-protection question is not whether a classification might produce some harsh results, but whether it promotes a legitimate objective. *See FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993) ("[E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices."). Indeed, the challenged law also excludes from athletic competition all non-transgender males who lack the size, speed, and strength to make the boys team. Still, because it advances the purpose of protecting the equal athletic opportunities of biological females, it is constitutional.

D.N. has also failed to plead discriminatory animus. D.N.'s response cites a single fact to support her allegation of discriminatory animus: the challenged law's reliance on a birth certificate filed at or near the time of birth. ECF No. 44 at 11–12. According to D.N., this demonstrates that the legislative purpose was not to exclude *all* biological males from participation in female athletic competition—which is what the law expressly provides—but rather to target transgender students.

This argument does not raise a plausible inference of discriminatory animus. The obvious purpose of a birth certificate filed at or near the time of birth is to ascertain the student's sex—the only criterion that the challenged law makes relevant to athletic-team assignments. In fact, a birth certificate filed around the time of birth does not indicate a student's transgender status at all, and thus does not enable the State to distinguish between transgender and non-transgender students. The birth-certificate provision simply and logically implements the statute's objective to exclude *all* biological males—*no matter their gender identity*—from participation on female athletic teams, and in doing so to reserve *all* athletic opportunities on female athletic teams to biological females.[3]

---

[3] D.N. proposes that discriminatory animus be "explored at trial," ECF No. 44 at 18, but D.N. must *plead* a "plausible inference" of discriminatory animus. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1915 (2020); *accord Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 238 (4th Cir. 2021) (affirming dismissal of equal-protection claim where plaintiff failed to plead "specific allegations" establishing a plausible inference of discriminatory

### III. D.N.'S DUE-PROCESS CLAIM SHOULD BE DISMISSED.

D.N. fails to identify any due-process injury that is not conjectural, or to explain how any future injury could be traceable to, or redressed by, the defendants. D.N. concedes that the primary "injury" she faces is potential disclosure of personal information in discovery in future litigation. But D.N. never explains how any of these defendants would be responsible for that potential injury.

D.N.'s allegation that one of these defendants might someday reveal D.N.'s gender identity in response to a student inquiry, ECF No. 44 at 14, does not confer standing for several reasons. First, this argument has nothing to do with the challenged private right of action provision, which does not even mention these defendants, let alone compel them to reveal anyone's gender identity.[4] § 1006.205(4), Fla. Stat. D.N. pleads no facts to suggest that she faces a concrete, imminent injury from a random, uncompelled disclosure of her gender identity. Nor does the private right of action provision envision any process by which students can obtain this information from the defendants.

*Susan B. Anthony List v. Dreihaus*, 573 U.S. 149 (2014), does not suggest that D.N.'s fear of future litigation establishes an injury. There, the plaintiffs pleaded a history of past enforcement, and the prosecution they feared would have been conducted by a named defendant. *Id*. at 161–63. Neither of those elements is present here. Moreover, unlike *Dreihaus*, the injury that D.N. asserts is not the threat of future prosecution, but a risk of disclosure during discovery if future litigation is ever filed—a risk that could be averted in the future suit, should it ever occur in the first place.

D.N. declares that her injury is traceable to and redressable by these defendants based on their general statutory authority in the domain of education and school sports, ECF No. 44 at 16— but she never explains *how*. D.N. does not identify a *single* obligation on the part of any defendant with regard to the challenged law's private right of action component, which is the *only* provision that D.N.'s due-process claim targets. With no role in exercising or enforcing the statute's private right of action, no injury from section 1006.205(4) is traceable to or redressable by the defendants.

The Eleventh Circuit squarely rejected D.N.'s argument in *Jacobsen v. Florida Secretary*

---

animus). D.N. may not avoid her burden and proceed to trial. *See Ashcroft v. Iqbal*, 556 U.S. 662, 686–87 (2009) (holding that conclusory statements are insufficient to plead discriminatory intent).

[4] D.N.'s lament that the defendants "have not been willing to assure plaintiff" that they will not reveal her identity is perplexing. ECF No. 44 at 14. D.N. has not asked the defendants for such an assurance. Nor would the assurance confirm or defeat the viability of D.N.'s due-process claim. D.N.'s concern over a potential disclosure of her gender identity is untethered to the statute's text, which compels no such disclosure, and thus is irrelevant to a constitutional challenge to the statute.

9

*of State*, 974 F.3d 1236, 1254 (11th Cir. 2020). There, the court held that the Secretary of State's position as "chief election officer" with "general supervision and administration of the election laws" did not create standing in a challenge to an election law that the Secretary had no authority to enforce. Here too, the defendants have no enforcement role with respect to section 1006.205(4).

*Department of Commerce v. New York*, 139 S. Ct. 2551, 2555–56 (2019), undercuts D.N.'s argument for the same reason. There, the Court found traceability based on the "predictable effect" of state action on the conduct of third parties—namely, that non-citizens would not respond to a citizenship question on the census, resulting in undercounting and the loss of federal funding. *Id.* Critically, the defendant in *Department of Commerce* was charged with administering the census. *Id.* at 2562. By contrast, none of the defendants here enforces or administers section 1006.205(4).

Finally, D.N.'s defense of her invasion-of-privacy claim on the merits conspicuously omits any explanation of why a court presiding over a future private action under section 1006.205(4) is not adequately equipped—and better positioned—to consider the due-process violation that D.N. anticipates will occur in that case. D.N. asserts that the Eleventh Circuit's balancing test applicable to informational right-to-privacy claims cannot be resolved at the pleadings stage, but indeed, it is not properly resolved here at all, but rather in the suit in which the violation is anticipated to occur.

## IV.   THE FHSAA SHOULD BE DISMISSED.

D.N. concedes that she does not allege any facts showing she attends a school that is a member of the FHSAA. Rather, D.N. argues that because she currently attends a school in a district in which other schools are members of the FHSAA, she somehow has standing to pursue her claim against the FHSAA. However, as is clear from the Florida Statutes, the FHSAA has no authority over non-member schools. Next, even if D.N. had alleged that she attends a member school, D.N. acknowledges that she fails to allege any facts showing she has sought to join an interscholastic athletic team regulated by the FHSAA and has been denied participation, nor does she allege any facts showing she plans to attend a member school in the near future. D.N. also admits she alleges no facts showing a causal connection between any asserted injury—denial of participation on an interscholastic athletic team—and any action of the FHSAA causing that denial or anticipated denial. Because D.N.'s complaint contains no allegations showing the FHSAA has taken any steps or engaged in any conduct to prohibit D.N. from playing on any FHSAA-regulated interscholastic athletic team at any FHSAA member school, the FHSAA should be dismissed from this lawsuit.

The defendants respectfully request that the Court dismiss D.N.'s complaint with prejudice.

10

Respectfully submitted,

/s/ *Raymond F. Treadwell*
Raymond F. Treadwell (FBN 93834)
Chief Deputy General Counsel
Joshua E. Pratt (FBN 119347)
Deputy General Counsel
EXECUTIVE OFFICE OF THE GOVERNOR
Office of General Counsel
The Capitol, PL-5
400 South Monroe Street
Tallahassee, FL 32399
Phone: (850) 717-9310
Facsimile: (850) 488-9810
Ray.Treadwell@eog.myflorida.com
Joshua.Pratt@eog.myflorida.com
Gov.Legal@eog.myflorida.com
*Attorneys for Governor Ron DeSantis*, *in his official capacity as Governor of the State of Florida*

/s/ *Anastasia Protopapadakis*
Anastasia Protopapadakis, FBN 051426
anastasia.protopapadakis@gray-robinson.com
GrayRobinson, P.A.
333 S.E. 3rd Avenue, Suite 3200
Miami, Florida 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887
*Attorneys for Defendants*, *Broward County School Board and Superintendent of Broward County Public Schools*

/s/ *Andy Bardos*
Andy Bardos (FBN 822671)
andy.bardos@gray-robinson.com
Ashley H. Lukis (FBN 106391)
ashley.lukis@gray-robinson.com
GRAYROBINSON, P.A.
P.O. Box 11189
Tallahassee, Florida 32302-3189
Telephone: 850-577-9090
*Attorneys for Defendants*, *Florida State Board of Education and Commissioner Corcoran*

/s/ *Barry A. Postman*
BARRY A. POSTMAN
*TRIAL COUNSEL*
Fla. Bar No: 991856
/s/ *Jessica DeBono Anderson*
JESSICA DEBONO ANDERSON
Fla. Bar No.: 58503
Cole, Scott & Kissane, P.A.
Tower Place, Suite 400
1900 Summit Tower Boulevard
Orlando, Florida 32810

Primary Email:
Barry.Postman@csklegal.com
Secondary Email:
Jessica.Anderson@csklegal.com
Secondary Email:
Cynthia.Acuna-Nelson@csklegal.com
Telephone: (321) 972-0034
Facsimile: (321) 972-0099
*Attorneys for Defendant*, *Florida High School Athletic Association*

/s/ *Leonard E. Ireland, Jr.*
Leonard E. Ireland, Jr.
Florida Bar No. 104630
18 Northwest 33rd Court
Gainesville, Florida 32607
(352) 376-4694 (Telephone)
(352) 371-7366 (Facsimile)
Lireland@Clayton-Johnston.com
Tbrehm@Clayton-Johnson.com
*Attorneys for Defendant, Florida High School Athletic Association*